IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

CYRUS KAR,                         |
                                   |
            Plaintiff,             |
                                   |
v.                                 |        No. 07-cv-00984-JR
                                   |
DONALD RUMSFELD, et al.,           |
                                   |
            Defendants.            |
_____|

## INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), and (6), the individual defendants, former Secretary of Defense Donald Rumsfeld, General George Casey, and General William Brandenburg, move to dismiss plaintiff's claims against them as follows:

1.      This Court should dismiss plaintiff's claims against General Brandenburg pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

2.      This Court should dismiss plaintiff's claims for damages under the United States Constitution pursuant to Federal Rule of Civil Procedure 12(b)(6) because plaintiff has failed to state a claim on which relief can be granted.  No such damages claims lie, and even if they did, qualified immunity would bar them.

3.      This Court should dismiss plaintiff's claims for damages under the Geneva Convention and the law of nations pursuant to Federal Rule of Civil Procedure 12(b)(1) because neither the Geneva Conventions nor the law of nations gives rise to a private right of action for damages, and even if they did, absolute immunity would bar plaintiff's claims.

4.      This Court should dismiss plaintiff's claims for a declaratory judgment under

Federal Rule of Civil Procedure 12(b)(1) and (6) because plaintiff lacks standing to seek such relief.

The grounds for dismissal are set forth in the accompanying memorandum of points and authorities. Pursuant to Local Civil Rule 7(c), a proposed order is attached.

Dated: September 17, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

TIMOTHY P. GARREN
Director, Torts Branch

MARY HAMPTON MASON (DC Bar # 4274671)
Senior Trial Attorney, Torts Branch


*/s/ Zachary C. Richter*
ZACHARY C. RICHTER (Texas Bar # 24041773)
Trial Attorney, Torts Branch
UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202)616-4199 (phone)
(202)616-4314 (fax)
Zachary.Richter@usdoj.gov

PAUL E. WERNER
Law Student Intern, Torts Branch

ATTORNEYS FOR DEFENDANTS

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————

CYRUS KAR,

      Plaintiff,

v.                                                No. 07-cv-00984-JR

DONALD RUMSFELD, et al.,

      Defendants.

—————————————————————

## MEMORANDUM IN SUPPORT OF
## INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

TIMOTHY P. GARREN
Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Attorney, Torts Branch

ZACHARY C. RICHTER
Trial Attorney, Torts Branch

PAUL E. WERNER
Law Student Intern, Torts Branch

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION

# TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST
      GENERAL BRANDENBURG FOR LACK OF PERSONAL JURISDICTION. . . . . . . 4

II.   THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR DAMAGES
      UNDER THE CONSTITUTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Plaintiff has no cause of action because special factors counsel
            against creating a damages action based on the actions of
            military personnel in a foreign war zone. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    Qualified immunity bars plaintiff's claims for damages
            under the Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            1.    Qualified immunity bars plaintiff's claims for damages
                  under the Constitution because he has not adequately
                  alleged personal involvement by the defendants. . . . . . . . . . . . . . . . 20

            2.    Qualified immunity bars plaintiff's claim for damages
                  under the Fourth Amendment because he has not alleged
                  a violation of any clearly established Fourth Amendment right. . . . . . . 22

                  a.    The decision to detain plaintiff did not violate the
                        Fourth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

                  b.    Plaintiff's alleged lack of access to a court did not
                        violate the Fourth Amendment. . . . . . . . . . . . . . . . . . . . . . . . 24

                  c.    Plaintiff has failed to plead any facts to support
                        his assertion of an unreasonable search. . . . . . . . . . . . . . . . . . 25

                  d.    Even if this Court were to find a Fourth Amendment
                        violation, qualified immunity would still bar damages
                        claims because the law governing detention of individuals
                        in foreign war zones was not clearly established. . . . . . . . . . . . . 26

       3.      Qualified immunity bars plaintiff's claim for damages
under the Fifth Amendment's Due Process Clause
because he has not alleged a violation of any clearly
established Fifth Amendment right. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

            a.      The length of plaintiff's detention did not violate
due process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

            b.      The procedures used to determine plaintiff's status
did not violate due process. . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

            c.      The limits on plaintiff's access to family members
did not violate due process. . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

III.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR DAMAGES
UNDER THE GENEVA CONVENTIONS AND THE LAW OF NATIONS. . . . . . . . 35

    A.    Plaintiff lacks a private right of action for damages
under the Geneva Conventions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    B.    Plaintiff lacks a private right of action for damages
under the law of nations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    C.    Absolute immunity bars plaintiff's claims for damages
under the Geneva Conventions and the law of nations. . . . . . . . . . . . . . . . . . 38

        1.      This Court should substitute the United States as defendant
on plaintiff's claims for damages under the Geneva Conventions
and the law of nations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

        2.      This Court should immediately dismiss any damages claims
against the United States because plaintiff has failed to exhaust
his administrative remedies and because his alleged injuries
occurred in a foreign country. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

IV.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR A
DECLARATORY JUDGMENT AGAINST THE INDIVIDUAL DEFENDANTS. . . . . 41

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

# TABLE OF AUTHORITIES

## Cases

*Al-Odah v. United States*, 406 F. Supp. 2d 37 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Ali v. District of Columbia*, 278 F.3d 1 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Anderson v. Creighton*, 483 U.S. 635 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Arar v. Ashcroft*, 414 F. Supp. 2d 250 (E.D.N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34 (D.D.C. 2003). . . . . . . . . . . . . . . . . . . 6, 8

*Baker v. McCollan*, 443 U.S. 137 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Bancoult v. McNamara*, 370 F. Supp. 2d 1 (D.D.C. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

* *Bell v. Wolfish*, 441 U.S. 520 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

* *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007). . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 26, 34

*Benzel v. Grammer*, 869 F.2d 1105 (8th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Best v. United States*, 184 F.2d 131 (1st Cir. 1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). . . . . . 3

* *Block v. Rutherford*, 468 U.S. 576 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

*Brewster v. Bd. of Educ.*, 149 F.3d 971 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

* *Brosseau v. Haugen*, 543 U.S. 194 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 27, 33

*Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bush v. Lucas*, 462 U.S. 367 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001). . . . . . . . . . . . . . . . . . . 17, 18, 19

*Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72 (D.D.C. 2003). . . . . . . . . . . . . . . 6

*Carlson v. Green*, 446 U.S. 14 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

\*     *Chappell v. Wallace*, 462 U.S. 296 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13, 14

*Comm. of U.S. Citizens Living in Nicar. v. Reagan*, 859 F.2d 929 (D.C. Cir. 1988). . . . . . . . . . 36

*Conn v. Gabbert*, 526 U.S. 286 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Council on Am. Islamic Relations v. Ballenger*, 444 F. 3d 659 (D.C. Cir. 2006). . . . . . . . . . . . 40

\*     *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Davis v. Passman*, 442 U.S. 228 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Davis v. Scherer*, 468 U.S. 183 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Dep't of Navy v. Egan*, 484 U.S. 518 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 27

*Feit v. Ward*, 886 F.2d 848 (7th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*FDIC v. Meyer*, 510 U.S. 471 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Formica v. Cascade Candle Co.*, 125 F. Supp. 2d 552 (D.D.C. 2001). . . . . . . . . . . . . . . . . . . . . . 8

*Gerstein v. Pugh*, 420 U.S. 103 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Goldberg v. Hennepin County*, 417 F.3d 808 (8th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Graham v. Connor*, 490 U.S. 386 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Green v. Baca*, 306 F. Supp. 2d 903 (C.D. Cal. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Gregoire v. Biddle*, 177 F.2d 579 (2d Cir. 1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Grewe v. France*, 75 F. Supp. 433 (E.D. Wis. 1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000). . . . . . . . . . 5, 7

*Hamdan v. Rumsfeld*, 415 F.3d 33 (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

\*     *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

iv

*Handel v. Artukovic*, 601 F. Supp. 1421 (C.D. Cal. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Harbury v. Hayden*, 444 F. Supp. 2d 19 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Hatfill v. Gonzales*, No. 03-1793, 2007 WL 842967 (D.D.C. Mar. 16, 2007). . . . . . . . . . . . . 41

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). . . . . . . . . . . . . . . . . 6

*Huynh Thi Anh v. Levi*, 586 F.2d 625 (6th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Ibrahim v. District of Columbia*, 357 F. Supp.2d 187 (D.D.C. 2004). . . . . . . . . . . . . . . . . . . . . 6

*Igartúa-de la Rosa v. United States*, 417 F.3d 145 (1st Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . 37

\*   *In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d 85 (D.D.C. 2007). . . . . . . . . . . . . . . . *passim*

\*   *Int'l Action Ctr. v. United States*, 365 F.3d 20 (D.C. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . 18, 20

*Int'l Shoe v. Washington*, 326 U.S. 310 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. Eisentrager*, 339 U.S. 763 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kirby v. City of Elizabeth*, 388 F.3d 440 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . 1

*Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Malley v. Briggs*, 475 U.S. 335 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mathews v. Eldridge*, 424 U.S. 319 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*McNeil v. United States*, 508 U.S. 106 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Middendorf v. Henry*, 425 U.S. 25 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

\*   *Moyer v. Peabody*, 212 U.S. 78 (1909). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 29

*Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*New Jersey v. T.L.O.*, 469 U.S. 325 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*North Dakota v. United States*, 495 U.S. 423 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 27

*Nuclear Transp. & Storage, Inc. v. United States*, 890 F.2d 1348 (6th Cir. 1989). . . . . . . . . . . 22

*Osborn v. Haley*, 127 S. Ct. 881 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Patton v. Przybylski*, 822 F.2d 697 (7th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Pitt v. District of Columbia*, 491 F.3d 494 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Princz v. Fed. Republic of Germany*, 26 F.3d 1166 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . . 37

*Rasul v. Rumsfeld*, 414 F. Supp. 2d 26 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Reid v. Covert*, 354 U.S. 1 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 31

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999). . . . . . . . . . . . . . . . . . . 33

*Richards v. Duke Univ.*, 480 F. Supp. 2d 222 (D.D.C. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Rizzo v. Goode*, 423 U.S. 362 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Robertson v. Merola*, 895 F. Supp. 1 (D.D.C. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Samson v. Califonia*, 126 S. Ct. 2193 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

\*  *Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985). . . . . . . . . . . . . . . . . . 12, 13, 14, 15

\*  *Saucier v. Katz*, 533 U.S. 194 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20, 27

*Schneider v. Kissinger*, 310 F. Supp. 2d 251 (D.D.C. 2004). . . . . . . . . . . . . . . . . . . . . . . . 12, 39

*Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1 (D.D.C. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Schweiker v. Chilicky*, 487 U.S. 412 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Scott v. Flowers*, 910 F.2d 201 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

\*  *Scott v. Harris*, 127 S. Ct. 1769 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 27

*Simpkins v. D.C. Gov't*, 108 F.3d 366 (D.C. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

\*  *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 16, 41

*Sudnick v. Dep't of Def.*, 474 F. Supp. 2d 91 (D.D.C. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . 37

\* *Terry v. Ohio*, 392 U.S. 1 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Ungaro-Benages v. Desdner Bank AG*, 379 F.3d 1227 (11th Cir. 2004). . . . . . . . . . . . . . . . . 37

*United States v. Bin Laden*, 126 F. Supp. 2d 264 (S.D.N.Y. 2000). . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Boynes*, 149 F.3d 208 (3d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. El-Hage*, 213 F.3d 74 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Gelfuso*, 838 F.2d 358 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Knights*, 534 U.S. 112 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Montoya de Hernandez*, 473 U.S. 531 (1985). . . . . . . . . . . . . . . . . . . . . . . . . 22

\* *United States v. Salerno*, 481 U.S. 739 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

\* *United States v. Smith*, 499 U.S. 160 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 40

\* *United States v. Stanley*, 483 U.S. 669 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14

*United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

\* *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990). . . . . . . . . . . . . . . . . . . . . . 11, 12, 19

*United States v. Willoughby*, 860 F.2d 15 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305 (1985). . . . . . . . . . . . . . . . . . . . 33

*Westfall v. Erwin*, 484 U.S. 292 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

\* *Wilkie v. Robbins*, 127 S. Ct. 2588 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 16

*Wilson v. Libby*, No. 06-1258, 2007 WL 2059094 (D.D.C. July 19, 2007). . . . . . . . . . . . . 12, 15

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Zadvydas v. Davis*, 533 U.S. 678 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Zakiya v. United States*, 267 F. Supp. 2d 47 (D.D.C. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

**Constitutional Provisions**

U.S. Const. art. I, § 8, cls. 1, 11-16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S. Const. art. II, § 2, cl. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Statutes**

28 U.S.C. § 2675. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

\*      28 U.S.C. § 2679. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39, 40

28 U.S.C. § 2680. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Auth. for Use of Military Force, Pub. L. No. 107-243, 116 Stat. 1498 (Oct. 16, 2002). . . . . . . . 13

Detainee Treatment Act, Pub. L. No. 109-163, 119 Stat. 3136 (2006). . . . . . . . . . . . . . . . . . . . 16

\*      Military Commissions Act of 2006, Pub. L. No. 109-366, § 5, 120 Stat. 2600, 2631-32. . . . . . . 36

Reagan Act, Pub. L. No. 108-375, 118 Stat. 1811 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.C. Code § 13-242. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

\*      D.C. Code § 13-423. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

## MEMORANDUM IN SUPPORT OF
## <u>INDIVIDUAL DEFENDANTS' MOTION TO DISMISS</u>

This memorandum addresses plaintiff Cyrus Kar's claims for money damages and a

declaratory judgment against three defendants sued in their individual capacities—former

Secretary of Defense Donald Rumsfeld, General George Casey, and General William

Brandenburg—based on plaintiff's detention in Iraq.  Plaintiff's claims against General

Brandenburg fail for lack of personal jurisdiction.  His remaining claims for damages fail

because he has no cause of action against individual federal officials for their conduct of military

operations abroad and because any such claims would be barred by qualified and absolute

immunity.  And his remaining claims for declaratory relief are not justiciable.  Therefore, this

Court should dismiss plaintiff's claims against the individual defendants under Federal Rule of

Civil Procedure 12(b)(1), (2), and (6).

## BACKGROUND

Plaintiff alleges that he is a United States citizen who traveled to Iraq in 2005 to film

footage for a historical documentary.  Compl. ¶¶ 21, 23-24.  While in Iraq, plaintiff was arrested

by Iraqi officials after the vehicle in which he was riding was stopped at a routine checkpoint and

found to contain washing machine timers, which are commonly used in improvised explosive

devices.  *Id.* ¶¶ 5, 25-26.  Iraqi officials transferred plaintiff to the custody of members of the

United States military after he represented himself to be a United States citizen.  *Id.* ¶ 26.[1]

---

[1]    Plaintiff alleges that he was held in the custody of the United States military.  *See, e.g.*,
Compl. ¶ 26.  That allegation is a legal conclusion that need not be accepted as true for purposes
of a motion to dismiss.  *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir.
1994).  Although the factual assertion that the plaintiff was physically held by members of the
United States Armed Forces is not contested for purposes of this motion, the United States forces
were acting as part of the Multinational Forces–Iraq ("MNF–I"), an international entity
comprised of forces from a number of different nations acting under international authority and at

1

Plaintiff alleges that he spent brief amounts of time in a number of different facilities before his ultimate transfer to Camp Cropper, a military detention facility near Baghdad. *Id.* ¶¶ 27, 33. He further alleges that, before arriving at Camp Cropper, he was mistreated in various ways by unknown military personnel. *Id.* ¶¶ 27-32. Plaintiff was detained at Camp Cropper for several weeks while the FBI completed an investigation that included a search of his residence in Los Angeles, to which plaintiff consented. *Id.* ¶¶ 36-39, 41. Plaintiff also agreed to take a lie detector test. *Id.* ¶ 40. Plaintiff complains that during his detention he was held in a small cell without an attached restroom and with limited opportunity for recreation; that he was not provided an attorney; that his access to family members was restricted and monitored; and that he could not speak to representatives of the United States embassy. *Id.* ¶¶ 8, 34-35, 43-46.

After the FBI investigation was complete, a status board was convened to determine plaintiff's status. *Id.* ¶¶ 9, 48-53. Plaintiff alleges that he asked for an attorney and various forms of evidence including access to witnesses and the report of his lie-detector test. *Id.* ¶ 51. The officials in charge informed plaintiff that an attorney was unavailable and that some evidence was confidential but did arrange to provide plaintiff with the results of his lie-detector test and to make a person who was apprehended with plaintiff available as a witness. *Id.* ¶ 52. At the end of the hearing, the officials in charge recommended his release. *Id.* ¶ 53. Plaintiff alleges that he was then detained for six more days, after which United States officials helped him return to the United States. *Id.* ¶¶ 56-57. His entire detention lasted fifty-five days. *See id.* ¶¶ 25, 56.

Approximately one year after his release, plaintiff filed suit in the Central District of

the request of the government of Iraq.

California seeking money damages from five individual federal employees for asserted violations of the Constitution and international law during his detention in Iraq. *See* Compl. ¶¶ 1, 79-107, *Kar v. Rumsfeld*, No. 06-4281 (C.D. Cal. filed July 7, 2006). The suit also sought a declaration that certain alleged policies were unlawful. *See id.* After the defendants filed comprehensive motions to dismiss, plaintiff voluntarily dismissed his claims and stated that he would refile in another forum in light of concerns over personal jurisdiction. *See* Notice of Voluntary Dismissal, *Kar v. Rumsfeld*, No. 06-4281 (C.D. Cal. Dec. 5, 2006).

Approximately six months later, plaintiff filed the instant suit against three of the five individual defendants named in his previous suit.[2] Plaintiff alleges that Donald Rumsfeld, the former Secretary of Defense, and General George W. Casey, former commander of MNF–I, initiated unspecified "policies" and granted unspecified "authorizations" that led to various deprivations of his rights. Compl. ¶¶ 14, 16. Plaintiff further alleges that General William H. Brandenburg, who supervised some detainee operations in Iraq, executed unspecified "policies, patterns or practices" related to his detention. *Id.* ¶ 17.

Plaintiff seeks various forms of relief from the three individual defendants. Invoking *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the plaintiff seeks damages from Generals Casey and Brandenburg for asserted violations of the Fourth and Fifth Amendments. Compl. ¶¶ 19, 70-71, 81-82, prayer for relief (b).[3] Plaintiff also

---

[2]    Plaintiff has not renewed his claims against Lieutenant Colonel John Dunlap, who had allegedly presided over the status board that recommended plaintiff's release, and Lieutenant Colonel Carol Haas, who served as Commandant of Camp Cropper. *See* Compl. ¶¶ 17-18, *Kar v. Rumsfeld*, No. 06-4281 (C.D. Cal. filed July 7, 2006).

[3]    Plaintiff does not seek damages from Secretary Rumsfeld. *See* Compl., prayer for relief (b). Even if he did, the same principles that bar plaintiff's damages claims against Casey and Brandenburg would bar any damages claim against Rumsfeld. *See infra* Parts II, III.

seeks damages from Generals Casey and Brandenburg for asserted violations of the Geneva

Conventions and the law of nations. *Id.*, prayer for relief (b). Finally, with respect to all

defendants, plaintiff seeks a declaration that alleged "acts, policies, patterns, or practices" violate

the Constitution and various forms of international law. *See id.*, prayer for relief (a).[4]

## ARGUMENT

This Court should dismiss plaintiff's claims against the individual defendants under

Federal Rules of Civil Procedure 12(b)(1), (2), and (6). First, plaintiff's claims against General

Brandenburg fail because plaintiff has not satisfied the statutory or constitutional preconditions

for personal jurisdiction. Second, no *Bivens* remedy lies against federal officials based on their

conduct of foreign military operations, and even if such a remedy existed, qualified immunity

would bar plaintiff's claims. Third, neither the Geneva Conventions nor the law of nations gives

rise to a private right of action for damages, and even if they did, absolute immunity would bar

plaintiff's claims. Fourth, plaintiff lacks standing to seek a declaratory judgment against the

individual defendants.

## I.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST GENERAL BRANDENBURG FOR LACK OF PERSONAL JURISDICTION.

In this suit, as in all individual-capacity suits, the plaintiff bears the burden of establishing

a basis for personal jurisdiction over each defendant. *Richards v. Duke Univ.*, 480 F. Supp. 2d

222, 229 (D.D.C. 2007); *Robertson v. Merola*, 895 F. Supp. 1, 3 (D.D.C. 1995). To carry this

burden, a plaintiff must "'allege specific facts connecting each defendant with the forum.'"

*Richards*, 480 F. Supp. 2d at 229 (quoting *Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1, 7

---

[4]    Plaintiff also seeks a declaratory judgment against the official-capacity defendant, Secretary of Defense Robert Gates. That claim, which is actually a claim against the United States, is addressed in a separate motion and memorandum.

4

(D.D.C. 1996)). "Conclusory statements and intimations" are insufficient. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000).

Plaintiff has failed to establish a basis for an exercise of personal jurisdiction over General Brandenburg in the District of Columbia. General Brandenburg is a resident of the State of Hawaii, not the District of Columbia. *See* Compl., caption. "To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE*, 199 F.3d at 1347. Plaintiff has satisfied neither part of this inquiry.

The only subsections of the District's long-arm statute potentially applicable to a case of this nature provide that

> [a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
> (1) transacting any business in the District of Columbia;
> . . .
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a).[5] To invoke any of these subsections, the basis for personal jurisdiction must arise from the conduct on which a plaintiff's claim is based. *See* D.C. Code § 13-423(b);

---

[5]    Other subsections of the long-arm statute extend specific personal jurisdiction over persons who contract to supply services in the District, have an interest in or use real property in the District; provide insurance within the District; or have a marital or parental relationship in the District. D.C. Code § 13-423(a)(2), (5), (6), (7). None of those provisions are conceivably relevant to this case.

5

*Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 44 (D.D.C. 2003).[6]

Plaintiff's allegations do not remotely meet these criteria. Plaintiff cannot satisfy section 13-423(a)(3) or (4), which authorize jurisdiction when a person has "caus[ed] tortious injury in the District of Columbia," because plaintiff has not alleged that he sustained any injury in the District. Plaintiff's alleged injuries occurred in Iraq, not the District. He alleges that he was arrested in Iraq, detained in Iraq, and suffered mistreatment in Iraq. *See* Compl. ¶¶ 4-10, 13, 25-58. Even if plaintiff alleged injuries caused by policies originating in the District, his claims still would not come within the purview of section 13-423(a)(3) or (4), for "the mere enforcement of a regulation that was promulgated here does not suffice to confer personal jurisdiction to a court in this district over individuals who are not located in this district and who committed no acts in this district, when the alleged injury sustained by the plaintiff also did not occur in this district either," *Zakiya v. United States*, 267 F. Supp. 2d 47, 53-54 (D.D.C. 2003). With respect to section 13-423(a)(3), plaintiff's allegations are doubly faulty because he fails to allege any "act or omission in the District of Columbia" by General Brandenburg. Plaintiff does not allege that

---

[6]    Section 13-422 of the District of Columbia Code provides for general personal jurisdiction over "a person domiciled in . . . or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." *See Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 75 (D.D.C. 2003). Plaintiff has not alleged that General Brandenburg is domiciled in the District or that he maintains a principal place of business here. Plaintiff has also failed to allege that General Brandenburg has the "continuous and systematic" contacts with the District of Columbia required by the Due Process Clause to support general personal jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). Whatever contacts General Brandenburg may have by virtue of his military position are irrelevant, as all such contacts are in his official capacity. *See Ali v. District of Columbia*, 278 F.3d 1, 7 (D.C. Cir. 2002) (refusing to exercise personal jurisdiction over Virginia officials whose only contacts with District were in their official capacities). Thus, only specific jurisdiction under section 13-423, i.e., jurisdiction based on conduct connected to the suit, is at issue in this case. *See Ibrahim v. District of Columbia*, 357 F. Supp. 2d 187, 192-93 (D.D.C. 2004); *Capital Bank*, 276 F. Supp. 2d at 75.

General Brandenburg took any action in the District of Columbia, and federal officers do not

engage in tortious conduct in the District simply because they act on behalf of federal agencies

headquartered here.  *See Ali*, 278 F.3d at 7; *Zakiya*, 267 F. Supp. 2d at 53.

Plaintiff also fails to satisfy section 13-423(a)(1) because he has not alleged that his

injuries arose from any transaction of business by General Brandenburg in the District of

Columbia.

> [T]o meet the requirements of personal jurisdiction under the 'transacting any
> business' prong of the long-arm statute, the plaintiff must prove first, that the
> defendant transacted business in the District of Columbia; second, that the claim
> arose from business transacted in D.C.; and third, that the defendant had minimum
> contacts with the District of Columbia such that the Court's exercise of personal
> jurisdiction would not offend traditional notions of fair play and substantial
> justice.

*Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 227 (D.D.C. 2005) (internal quotation marks and

citations omitted).  Plaintiff's claimed injuries allegedly "directly resulted from the policies and

practices of the U.S. military in its detention operations in Iraq," Compl. ¶ 4, not from any

transaction of business by General Brandenburg in the District.  Even if plaintiff had asserted that

the alleged policies and practices originated in the District—which he has not—such an assertion

would still be insufficient, for a federal employee based outside the District does not "transact[]

business" in the District simply by virtue of his federal employment.  *See Ali*, 278 F.3d at 7;

*Zakiya*, 267 F. Supp. 2d at 54.

In any event, an exercise of personal jurisdiction over General Brandenburg would not

satisfy due process.  Due process requires that a plaintiff "show 'minimum contacts' between the

defendant and the forum establishing that 'the maintenance of the suit does not offend traditional

notions of fair play and substantial justice.'"  *GTE*, 199 F.3d at 1347 (quoting *Int'l Shoe v.

Washington*, 326 U.S. 310, 316 (1945)).  To meet the minimum contacts requirement, "plaintiff

must allege some specific facts evidencing purposeful activity by the defendant in the District of Columbia by which [he] invoked the benefits and protections of the District's laws." *Atlantigas*, 290 F. Supp. 2d at 44. Plaintiff has not alleged any such purposeful activity by General Brandenburg in the District. Without exception, every one of the alleged "policies, patterns or practices" purportedly "executed" by General Brandenburg was executed in Iraq and directed at individuals in Iraq. *See* Compl. ¶¶ 17, 59-65. The complaint makes no allegation that these policies were crafted in or directed at the District or that General Brandenburg took any action directed anywhere other than at Iraq.

At bottom, plaintiff is attempting to have this Court exercise personal jurisdiction over a Hawaii resident to decide a claim by a California resident based on events that allegedly transpired in Iraq. Neither the District long-arm statute nor the Due Process Clause permits such a result. *Cf. Formica v. Cascade Candle Co.*, 125 F. Supp. 2d 552, 556 (D.D.C. 2001) (explaining that District's interest in adjudicating a suit is diminished, and thus personal jurisdiction is less reasonable, when the plaintiff is not a District resident). Because plaintiff has failed to bear his burden of establishing a basis for personal jurisdiction over General Brandenburg, this Court should dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(2).

## II.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR DAMAGES UNDER THE CONSTITUTION.

Plaintiff's first two causes of action are *Bivens* claims against General Casey and General Brandenburg for alleged violations of rights asserted under the Fourth Amendment, *see* Compl.

¶¶ 79-89, and the Fifth Amendment's Due Process Clause, *see* Compl. ¶¶ 68-78.[7]  This Court

should dismiss these claims for two reasons.  First, plaintiff has no cause of action to seek

damages based on the actions of military personnel engaged in ongoing hostilities in a foreign

war zone.  Second, even if a cause of action did exist, qualified immunity would bar these claims

because the conduct alleged by plaintiff did not violate any clearly established rights.

> **A.    Plaintiff has no cause of action because special factors counsel against creating a damages action based on the actions of military personnel in a foreign war zone.**

Plaintiff asks this Court to take the unprecedented step of inferring directly from the

Constitution a damages action for injuries allegedly caused by United States military personnel

engaged in active hostilities in a foreign war zone.  The "special factors" doctrine developed by

the Supreme Court in *Bivens* and its progeny precludes any such action.  A judicially created

damages remedy for constitutional violations "is not an automatic entitlement."  *Wilkie v.*

*Robbins*, 127 S. Ct. 2588, 2597-98 (2007).  In *Bivens*, the Court held that a plaintiff alleging a

violation of the Fourth Amendment could sue for damages in the absence of a statutory cause of

action only when there were no "special factors counseling hesitation" against judicial creation of

a remedy.  403 U.S. at 396.  Subsequently, the Court countenanced the expansion of *Bivens* on

just two occasions and in both instances specifically determined that there were no such "special

factors."  *See Carlson v. Green*, 446 U.S. 14, 19 (1980); *Davis v. Passman*, 442 U.S. 228, 246

(1979).  In the twenty-seven years since *Carlson*, the Court has "in most instances . . . found a

*Bivens* remedy unjustified," *Wilkie*, 127 S. Ct. at 2597-98, and has therefore "consistently refused

---

[7]    As noted above, plaintiff does not seek damages from Secretary Rumsfeld.  *See* Compl.,
prayer for relief (b).  Even if plaintiff had sought damages from Secretary Rumsfeld, his claims
would fail for the same reasons his damages claims against Generals Casey and Brandenburg fail.

to extend *Bivens* liability to any new context or new category of defendants," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).[8]  As a result, "recognizing such a claim is clearly disfavored."  *In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d 85, 93-94 (D.D.C. 2007), *appeal docketed sub nom. Ali v. Rumsfeld*, No. 07-5178 (D.C. Cir. May 31, 2007); *accord Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005) (recognizing presumption against judicial recognition of direct actions for violations of the Constitution by federal officials or employees).

Plaintiff seeks a radical extension of *Bivens* into a context the courts have already identified as inappropriate for implied damages actions.  His proposed action would allow persons detained by United States military personnel on the field of battle to subject those military personnel to damages suits implicating their personal assets.  Creating a non-statutory damages remedy in this context would violate bedrock separation-of-powers principles, including most critically the political branches' authority over military and foreign affairs, and would create an unworkable cause of action with serious adverse consequences for national defense.

Because the Constitution explicitly grants authority over military affairs and national security to Congress, *see* U.S. Const. art. I, § 8, cls. 1, 11-16, and the Executive, *see id.* art. II, § 2, cl. 1, the Supreme Court has repeatedly emphasized that courts should refrain from interfering in these core executive and legislative functions.  *See, e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507,

---

[8]    *See, e.g.*, *Malesko*, 534 U.S. at 68 (refusing to recognize a *Bivens* remedy against private companies performing governmental functions under federal contracts because doing so would not serve the public policy purposes of the remedy); *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (refusing to allow a *Bivens* claim against a federal agency because of its potential impact on federal fiscal policy); *Schweiker v. Chilicky*, 487 U.S. 412, 425-29 (1988) (rejecting a *Bivens* remedy for the denial of Social Security benefits because a statutory procedure already existed to challenge adverse eligibility determinations); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (refusing to recognize a *Bivens* remedy for the alleged violation of First Amendment rights arising out of federal personnel decisions for fear that the claim might interfere with a statutory scheme regulating the federal workplace).

531 (2004) (plurality opinion) ("Without doubt, our Constitution recognizes that core strategic matters of warmaking belong in the hands of those who are best positioned and most politically accountable for making them."); *North Dakota v. United States*, 495 U.S. 423, 443 (1990) ("When the Court is confronted with questions relating to . . . military operations, we properly defer to the judgment of those who must lead our Armed Forces in battle."); *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988) ("[U]nless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs."). In keeping with this deference, the Supreme Court has twice refused under the special factors doctrine to create a *Bivens* action against military officials. In *Chappell v. Wallace*, 462 U.S. 296, 304 (1983), the Court rejected a proposed damages remedy that would have allowed military personnel to sue their superior officers because "[a]ny action to provide a judicial response by way of such a remedy would be plainly inconsistent with Congress' authority in this field." And in *United States v. Stanley*, 483 U.S. 669, 681-82 (1987), the Court again rejected a proposed damages remedy for injuries related to military service—this time against both military and civilian personnel—because "the insistence (evident from the number of Clauses devoted to the subject) with which the Constitution confers authority over the Army, Navy, and militia upon the political branches . . . counsels hesitation in our creation of damages remedies in this field."

The Court has likewise deferred to the political branches in matters of foreign policy. *See, e.g.*, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 n.21 (2004) (noting "policy of case-specific deference to the political branches" in foreign affairs and "strong argument that federal courts should give serious weight to the Executive Branch's view of the case's impact on foreign policy"); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 273 (1990) (highlighting "significant

and deleterious consequences" that the creation of a damages action would have on "foreign

policy operations").  Courts have approached foreign affairs with caution even when Congress

has passed a statute contemplating some form of judicial review, *see, e.g.*, *Sosa*, 542 U.S. at 727-

28, and caution is even more warranted when, as in this case, the proposed cause of action would

be judicially created.  Thus, in *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 205, 208-09 (D.C.

Cir. 1985), the D.C. Circuit refused to create a *Bivens* remedy against federal officials based on

their alleged involvement in an armed conflict abroad.  Citing *Chappell* and the risk of

obstruction of the political branches' conduct of foreign policy, the court explained that "the

special needs of foreign affairs" required the court to "stay [its] hand" in the creation of the

proposed remedy.  *See id.*; *see also Arar v. Ashcroft*, 414 F. Supp. 2d 250, 252 (E.D.N.Y. 2006)

(refusing, in light of political branches' authority over foreign affairs, to infer *Bivens* remedy for

removal of an alien from the United States, allegedly for the express purpose of detention and

torture by foreign officials), *appeal docketed*, No. 06-4216 (2d Cir. Oct. 17, 2006); *cf. Verdugo*,

494 U.S. at 275 ("If there are to be restrictions on searches and seizures which occur incident to

such American action, they must be imposed by the political branches through diplomatic

understanding, treaty, or legislation."); *Schneider v. Kissinger*, 412 F.3d 190, 191 (D.C. Cir.

2005) (refusing under political question doctrine to decide common-law tort claims for alleged

orchestration of coup and torture), *cert. denied*, 547 U.S. 1069 (2006); *Wilson v. Libby*, No. 06-

1258, 2007 WL 2059094, at *16 (D.D.C. July 19, 2007) (refusing to create *Bivens* remedy for

allegedly retaliatory disclosure of covert status because of separation-of-powers and justiciability

concerns), *appeal docketed*, No. 07-5257 (D.C. Cir. July 27, 2007).

Plaintiffs' proposed cause of action—a damages suit contesting the conduct of military

personnel in a foreign war zone—directly implicates both the military affairs and foreign policy

considerations that have led courts, including this Court, to reject the extension of *Bivens*

plaintiff proposes.  In *In re Iraq*, 479 F. Supp. 2d 95, a number of plaintiffs sought damages from

federal officials based on allegations of improper detention and abuse during the conflicts in Iraq

and Afghanistan.  Citing the separation-of-powers concerns emphasized in *Chappell*, *Stanley*,

and *Sanchez-Espinoza*, this Court found that special factors precluded the creation of an implied

damages remedy in the absence of action by Congress.  *See id.* at 104-07.  Plaintiff's proposed

cause of action is indistinguishable from the proposed cause of action rejected in *In re Iraq*.[9]

Like the plaintiffs in *In re Iraq*, plaintiff seeks damages from military officials who purportedly

caused his detention, *see* Compl. ¶¶ 3-10.  His allegations are directly related to a foreign military

engagement that Congress specifically authorized the Executive to conduct, *see* Auth. for Use of

Military Force, Pub. L. No. 107-243, 116 Stat. 1498 (Oct. 16, 2002).  Plaintiff's proposed cause

of action, in fact, would intrude directly on a core war-making function—the detention of

individuals apprehended on the field of battle.  *See Hamdi*, 542 U.S. at 518.  The Supreme

Court's recognition of the limits on judicial review of military actions and foreign policy and its

consistent refusal to imply *Bivens* remedies in new contexts preclude the judicially-created action

urged by plaintiff.

These concerns with separation of powers are alone sufficient to preclude inferring a

*Bivens* remedy, but plaintiff's proposed cause of action implicates more than just constitutional

theory.  Allowing such suits would have deleterious practical effects that militate against creating

the cause of action plaintiff proposes.  *See Wilkie*, 127 S. Ct. at 2601 (2007) (rejecting proposed

---

[9]     Although the plaintiffs in *In re Iraq* were not United States citizens, the same separation-of-powers concerns are equally present whenever courts undertake to direct how the military may act in foreign war zones.  *See In re Iraq*, 479 F. Supp. 2d at 103-07 (analyzing separation-of-powers concerns as independent basis for declining to create damages remedy).

*Bivens* remedy based on "difficult[ies]" that would arise in administering remedy).  First, the
threat of a damages remedy would unduly interfere with military decisionmaking and discipline.
*See Stanley*, 483 U.S. 683 ("Even putting aside the risk of erroneous judicial conclusions (which
would becloud military decisionmaking), the mere process of arriving at correct conclusions
would disrupt the military regime.").  Because military personnel could be held personally liable
when their battlefield conduct did not satisfy the standards adopted by a domestic court, fear of
personal tort liability rather than sound military policy could drive decisions regarding sensitive
matters of national security and the conduct of our troops abroad.  *See In re Iraq*, 479 F. Supp. 2d
at 105 ("Commanders likely would hesitate to act for fear of being held personally liable for any
injuries resulting from their conduct."); *cf. Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)
(highlighting concern that fear of lawsuits would "'dampen the ardor of all but the most resolute,
or the most irresponsible [public officials], in the unflinching discharge of their duties'")
(quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)) (alteration in *Harlow*).  The risk
of personal tort liability would also have military personnel on the front lines second-guessing
themselves and their commanders in an environment where discipline and decisive action are
crucial.  *See Chappell*, 462 U.S. at 300 ("[T]he habit of immediate compliance with military
procedures and orders must be virtually reflex with no time for debate or reflection."); *In re Iraq*,
479 F. Supp. 2d at 105 (warning that recognition of damages remedy "might leave subordinate
personnel questioning the authority by which they are commanded and further encumber the
military's ability to act decisively").

Second, such a cause of action would give individuals opposed to the political branches'
conduct of foreign and military affairs a means of interfering with ongoing operations.  *See
Sanchez-Espinoza*, 770 F.2d at 209 ("[T]he danger of foreign citizens' using the courts in

14

situations such as this to obstruct the foreign policy of our government is sufficiently acute that [courts] must leave to Congress the judgment whether a damages remedy should exist."); *In re Iraq*, 479 F. Supp. at 105 ("The discovery process alone risks aiding our enemies by affording them a mechanism to obtain what information they could about military affairs and disrupt command missions by wresting officials from the battlefield to answer compelled deposition and other discovery inquiries about the military's interrogation and detention policies, practices, and procedures.").  Thus, as this Court has recognized, "[t]here is no getting around the fact that authorizing monetary damages remedies against military officials engaged in an active war would invite enemies to use our own federal courts to obstruct the Armed Forces' ability to act decisively and without hesitation in defense of our liberty and national interests."  *In re Iraq*, 479 F. Supp. 2d at 105.[10]

Third, plaintiff's proposed cause of action would prove extremely difficult to adjudicate. Not only would courts become enmeshed in discovery into sensitive military operations and confidential matters of national security, but much of that discovery would take place in a foreign war zone in the midst of ongoing hostilities.  *See Hamdi*, 542 U.S. at 531-32 (warning of problems with discovery that "would both intrude on the sensitive secrets of national defense and result in a futile search for evidence buried under the rubble of war"); *see also Wilson*, 2007 WL 2059094, at *17-18 (rejecting proposed *Bivens* remedy in part because it would have necessitated

---

[10]     *Sanchez-Espinoza*, 770 F.2d at 209, and *In re Iraq*, 479 F. Supp. at 106-07, dealt in particular with the danger of foreigners using the court to obstruct foreign policy, but the potential for interference with the political branches' conduct of foreign policy does not vary according to the nationality of a potential plaintiff.  United States citizens, no less than foreigners, might use personal-capacity tort litigation rather than the political process to oppose foreign policy initiatives to which those citizens object.  *Cf. Hamdi*, 452 U.S. at 519 (recognizing that a citizen, like an alien, can be hostile to the United States).

discovery into issues of national security); *Arar v. Ashcroft*, 414 F. Supp. 2d at 281-83 (same).

Moreover, crafting a "workable cause of action," *Wilkie*, 127 S. Ct. at 2601, would prove

extremely difficult in this context.  As discussed in more detail below, the constitutional rights, if

any, an individual may claim in a foreign war zone are not only unsettled, but also subject to the

broad latitude that the military must have in warmaking.  *See infra* Part II.B.  Defining a cause of

action based on such contingent and ill-defined rights raises "line drawing difficulties" analogous

to those the Supreme Court cited in *Wilkie* as counseling against the creation of a *Bivens* action in

that case.  *See* 127 S. Ct. at 2601-02.

These practical considerations make Congress, not the Judiciary, the appropriate branch

to create any damages action in this context.  *Cf. Sosa*, 542 U.S. at 727-28.  Congress, however,

has not created any such damages remedy.  In fact, "Congress has twice issued legislation

addressing detainee treatment without creating a private cause of action for detainees injured by

military officials." *In re Iraq*, 479 F. Supp. 2d at 107 n.23 (citing the Detainee Treatment Act,

Pub. L. No. 109-163, 119 Stat. 3136, 3474-75 (2006) (codified at 42 U.S.C. § 2000dd), and the

Reagan Act, Pub. L. No. 108-375, 118 Stat. 1811, 2068-71 (2004) (codified at 10 U.S.C. § 801,

stat. note §§ 1091-92)).  As this Court explained in *In re Iraq*, the absence of any provision for

damages actions in this legislation is "some indication that Congress' inaction in this regard has

not been inadvertent." *Id.*

In sum, plaintiff proposes a judicially-created remedy that would interfere with the

political branches' authority over military operations in a foreign war zone and create serious

practical difficulties both on the field of battle and in domestic courts.  In this context, "a general

*Bivens* cure would be worse than the disease," *Wilkie*, 127 S. Ct. at 2604.  Therefore, this Court

should refuse to create a cause of action and dismiss plaintiff's constitutional damages claims.

16

**B.    Qualified immunity bars plaintiff's claims for damages under the Constitution.**

Qualified immunity shields government officials from suits for damages so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. Individual-capacity suits such as this one "can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). These costs accrue even when an individual defendant is no longer in office. *Simpkins v. D.C. Gov't*, 108 F.3d 366, 370 (D.C. Cir. 1997). Qualified immunity guards against these costs by providing "ample room for mistaken judgments" and protecting all government officials except "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

The Supreme Court has designed a two-part test to assess qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Butera v. District of Columbia*, 235 F.3d 637, 646 (D.C. Cir. 2001). The "initial inquiry" must be whether the officer's alleged conduct violated a constitutional right. *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007). If no constitutional right was violated, then "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. But "[i]f, and only if, the court finds a violation of constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Scott*, 127 S. Ct. at 1774 (quoting *Saucier*, 533 U.S. at 201). The plaintiff bears the burden of showing that the rights he seeks to vindicate were clearly established. *See Davis v. Scherer*, 468 U.S. 183, 197 (1984).

Critical to any qualified immunity analysis is recognition that the inquiry is "fact-

specific," *Anderson*, 483 U.S. at 641, and "must be undertaken in light of the specific context of the case, not as a broad general proposition," *Saucier*, 533 U.S. at 201.  "'[C]ourts must not define the relevant constitutional right in overly general terms, lest they strip the qualified immunity defense of all meaning.'"  *Int'l Action Ctr. v. United States*, 365 F.3d 20, 25 (D.C. Cir. 2004) (quoting *Butera*, 235 F.3d at 646).  Thus, to overcome qualified immunity, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right."  *Anderson*, 483 U.S. at 640 (emphasis added).

Accordingly, plaintiff must do more than intone "due process" and "unreasonable search and seizure."  *See Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006) ("[I]t is not enough to say that it is clearly established that police officers may not subject individuals to unreasonable searches and seizures."); *cf. Int'l Action Ctr.*, 365 F.3d at 25 ("It does no good to allege that police officers violated the right to free speech, and then conclude that the right to free speech has been 'clearly established' in this country since 1791.").  Rather, plaintiff must demonstrate that a person detained with suspicious items in a foreign war zone during a period of active hostilities is entitled to *particular* constitutional protections he asserts.  *Cf. Brosseau v. Haugen*, 543 U.S. 194, 200 (2004) (per curiam) (rejecting consideration of general right against use of excessive force and instead identifying relevant question as "whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight").

Whatever constitutional rights a person may claim upon apprehension in a foreign war zone, the Supreme Court has made clear that those rights are far from certain or settled.  *See*

*Verdugo*, 494 U.S. at 268-69 (refusing "to endorse the view that every constitutional provision applies wherever the United States Government exercises its power"); *Reid v. Covert*, 354 U.S. 1, 33-34 (1957) (plurality) ("In the face of an actively hostile enemy, military commanders necessarily have broad power over persons on the battlefront."); *id.* at 45, 64 (Frankfurter, J., concurring) (endorsing context-specific analysis of extraterritorial application of constitutional rights); *id.* at 74-75 (Harlan, J., concurring) ("I cannot agree with the suggestion that every provision of the Constitution must always be deemed automatically applicable to American citizens in every part of the world.").[11]   And when, as in this context, any available rights must necessarily remain subject to the executive's broad authority to conducting war, *see Hamdi*, 542 U.S. at 531, drawing definitive boundaries for government action is exceedingly difficult. Against this backdrop, it is highly unlikely that any aspect of the Fourth Amendment or due process clearly applies to the specific context presented by this case.  *Cf. Pitt v. District of Columbia*, No. 05-7157, 491 F.3d 494, 512 (D.C. Cir. 2007) (holding officers entitled to qualified immunity where courts had not defined how malicious prosecution might implicate Fourth Amendment rights); *Butera*, 235 F.3d at 652-53 (holding officers entitled to qualified immunity where courts had never before recognized liability in particular context).  But even assuming for purposes of this motion that those constitutional provisions might apply to the context at issue, plaintiff cannot demonstrate any constitutional violation, much less a violation

---

[11]    In *Verdugo-Urquidez*, 494 U.S. at 270, the Court explicitly rejected the argument that *Reid* stands for the "sweeping proposition" that "federal officials are constrained by the Fourth Amendment wherever and against whomever they act."  The Court in *Reid* addressed whether the wives of American servicemen could be tried by military tribunals without the protection of the Fifth and Sixth Amendments, and its holding was limited to this narrow issue because "[t]he concurrences by Justices Frankfurter and Harlan in *Reid* resolved the case on much narrower grounds than the plurality and declined even to hold that United States citizens were entitled to the full range of constitutional protections in all overseas criminal prosecutions."  *Id.* at 269-70.

19

of clearly established law.

**1.    Qualified immunity bars plaintiff's claims for damages under the Constitution because he has not adequately alleged personal involvement by the defendants.**

To surmount the first step of qualified immunity—a showing of a constitutional violation by the defendant, *see Saucier*, 533 U.S. at 201—"[t]he complaint must at least allege that the defendant federal official was *personally involved* in the illegal conduct," *Simpkins*, 108 F.3d at 369 (emphasis added); *see also Int'l Action Ctr.*, 365 F.3d at 23-24. There is no *respondeat superior* liability in constitutional tort. *See Int'l Action Ctr.*, 365 F.3d at 27-28. "A supervisor who merely fails to detect and prevent a subordinate's misconduct, therefore, cannot be liable for that misconduct." *Id.* at 28. Rather, "'[t]he supervisor[] must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see.'" *Id.* at 28 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). "In the absence of any such 'affirmative links,' the supervisors cannot be shown to have the requisite 'direct responsibility' or to have given 'their authorization or approval of such misconduct,' and the effort to hold them personally liable fades into *respondeat superior* or vicarious liability." *Id.* at 27 (quoting *Rizzo v. Goode*, 423 U.S. 362, 371, 376 (1976)) (internal citations omitted).

Plaintiff has not alleged any facts that would affirmatively link senior-level officials to the injuries he alleges. Plaintiff lards his complaint with legal conclusions designed to distract from the absence of any true factual allegations, but those legal conclusions are insufficient to establish an affirmative link even under notice-pleading rules. Notice pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). Plaintiff's allegations against the individual defendants are conclusory assertions of liability devoid of any factual

20

content.  *See* Compl. ¶ 16 (alleging that Casey "initiated and issued" unspecified "policies and

authorizations" that led to violations); *id.* ¶ 17 (alleging that Brandenburg is "responsible" for

detainee operations and that he "personally executed" unspecified "unlawful policies, patterns or

practices"); *id.* ¶ 66 (alleging that unspecified "actions and failures of duties" would "foreseeably

lead to injury"); *id.* ¶ 74 (alleging that defendants had "actual or constructive knowledge" that

undifferentiated "actions, orders, policies, or practices" would lead to "violations"); *id.* ¶ 95

(alleging causation); *id.* ¶ 97 (alleging proximate causation); *id.* ¶ 103 (alleging that defendants

"are liable" because they "formulated, approved, authorized, directed, supervised, or carried out"

unspecified policies).[12]  Notice pleading demands more than inserting a particular defendant's

name into a general statement of the law.  *See Bell Atl.*, 127 S. Ct. at 1964-65.  No matter how

many different ways plaintiff restates his conclusory assertion of liability, he cannot substitute

that conclusory assertion for the requisite factual allegations.  *See Gonzalez v. Reno*, 325 F.3d

1228, 1235-36 (11th Cir. 2003) (finding similar allegations too "vague and conclusory" to

establish supervisory liability); *Patton v. Przybylski*, 822 F.2d 697, 701 (7th Cir. 1987) (rejecting

constitutional tort claim based on "boilerplate" allegations that defendant had adopted a "custom,

practice, and policy").  As the Sixth Circuit has explained, "[i]f a mere assertion that a former

---

[12]     As noted above, plaintiff does not seek damages from Secretary Rumsfeld, *see* Compl.,
prayer for relief (b).  Nor could he.  Each of plaintiff's allegations against Secretary Rumsfeld is
either an attempt to assert *respondeat superior* liability or a formulaic recitation of the legal
standard for supervisory liability.  *See* Compl. ¶ 14 (alleging "control and authority over
detention of persons . . . in Iraq" and unspecified "authorizations that foreseeably led" to injury);
*id.* ¶ 72 (alleging that Secretary Rumsfeld "is liable . . . because he had actual or constructive
knowledge" of undifferentiated violations and based on unspecified "actions, orders, policies,
and authorizations"); *id.* ¶ 83 (same); *id.* ¶ 94 (alleging that Secretary Rumsfeld "is liable . . .
because he ordered, directed, condoned, or ratified the actions of his subordinates" and
"participated in the promulgation of policies regarding U.S. military detention of persons in
Iraq").

cabinet officer and two other officials acted to implement, approve, carry out, and otherwise facilitate alleged unlawful policies were sufficient to state a claim, any suit against a federal agency could be turned into a *Bivens* action by adding a claim for damages against the agency head and could needlessly subject him to the burdens of discovery and trial." *Nuclear Transp. & Storage, Inc. v. United States*, 890 F.2d 1348, 1355 (6th Cir. 1989) (internal quotation marks omitted). In the absence of any factual allegations affirmatively linking Generals Casey and Brandenburg to plaintiff's asserted injuries, his complaint is insufficient to overcome the first step of qualified immunity and should be dismissed.

> **2.    Qualified immunity bars plaintiff's claim for damages under the Fourth Amendment because he has not alleged a violation of any clearly established Fourth Amendment right.**

Plaintiff has not alleged a violation of any Fourth Amendment rights he may have had. The "touchstone" and "central inquiry" of the Fourth Amendment is "reasonableness." *United States v. Knights*, 534 U.S. 112, 118-19 (2001); *Terry v. Ohio*, 392 U.S. 1, 19 (1968). Because what is reasonable varies from situation to situation, "the specific content and incidents of this right must be shaped by the context in which it is asserted." *Terry*, 392 U.S. at 9. Although plaintiff invokes the "probable cause" standard applied to some searches and seizures within the United States, *see* Compl. ¶ 81(a), "probable cause" is not an "irreducible requirement" of the Fourth Amendment. *New Jersey v. T.L.O.*, 469 U.S. 325, 340-41 (1985). Rather, reasonableness depends on a balancing of the intrusion on the individual against the government interests at stake. *See Samson v. Califonia*, 126 S. Ct. 2193, 2197 (2006). The government interests at stake often make a more permissive standard—including no suspicion requirement at all—entirely reasonable. *See, e.g.*, *id.* (permitting suspicionless search of parolee); *United States v. Montoya de Hernandez*, 473 U.S. 531, 537-38 (1985) (recognizing that routine border searches are not

22

subject to any requirement of reasonable suspicion or probable cause and requiring only

reasonable suspicion for seizure of person at border); *Terry*, 392 U.S. at 21-22 (permitting

temporary seizure based on reasonable suspicion).  Accordingly, even those few courts that have

assumed the Fourth Amendment applies at all to military action in foreign territory have declined

to impose requirements analogous to those applicable to domestic law enforcement and have

instead recognized that the discretion of military personnel in such situations is extremely broad.

*See Best v. United States*, 184 F.2d 131, 138-39 (1st Cir. 1950) (search in occupied post-World

War II Austria); *Grewe v. France*, 75 F. Supp. 433, 437 (E.D. Wis. 1948) (arrest in occupied

post-World War II Germany).

The military interests at stake in wartime Iraq justify extremely broad authority to search

and seize individuals encountered there.  American military personnel are operating in a foreign

country with a fledgling government and legal system.  They must perform their duties against

the backdrop of an ongoing insurgency with a deadly proclivity for attacking American troops

and civilian targets with improvised explosive devices.  *See generally In re Iraq*, 478 F. Supp. 2d

at 102-03 (taking judicial notice that United States is at war in Iraq and that hostilities are

ongoing). Given this context, none of the actions challenged by plaintiff violated any Fourth

Amendment right, much less any clearly established Fourth Amendment right.

### a.    The decision to detain plaintiff did not violate the Fourth Amendment.

The first component of plaintiff's Fourth Amendment claim is an attack on the decision

to hold him pending further investigation after his transfer from Iraqi custody.  *See* Compl.

¶ 81(a).  This decision was reasonable and did not violate the Fourth Amendment.  Plaintiff

himself alleges that Iraqi officials found washing machine timers, which are common

components of improvised explosive devices, in the trunk of the vehicle in which he was riding. *See* Compl. ¶¶ 5, 25. Traveling in this vehicle with plaintiff was a national of Iran. *See id.* ¶ 25. And Iraqi officials, having stopped the vehicle, had determined that there was cause to detain these individuals and to turn them over to United States military personnel. *See id.* ¶¶ 25-26. Given this information and the backdrop of an ongoing insurgency, the decision to hold plaintiff pending investigation was reasonable.

> **b.**    **Plaintiff's alleged lack of access to a court did not violate the Fourth Amendment.**

Plaintiff next asserts that he was improperly denied access to a court or legal process to review his detention. *See* Compl. ¶ 81(b). The precise contours of this assertion are unclear, but to the extent plaintiff contends that he was entitled to some sort of preliminary judicial review of his status in conjunction with his seizure, he is mistaken. To ascertain when and if an individual arrested within the United States must receive some sort of preliminary legal process, the Supreme Court has attempted to strike a "'practical compromise' between the rights of individuals and the realities of law enforcement." *County of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975)). In the context of domestic law enforcement, for instance, the Court has struck that balance after considering both the individual's interests and the government's "strong interest in protecting public safety by taking into custody those persons who are reasonably suspected of having engaged in criminal activity, even where there has been no opportunity for a prior judicial determination of probable cause." *County of Riverside*, 500 U.S. at 52.

When military personnel attempt to suppress a brutal insurgency in a foreign country, the constitutional balance must be struck in a way that allows even more flexibility. Weighing in

favor of flexibility in the domestic situation are the "everyday problems of processing suspects through an overly burdened criminal justice system." *Id.* at 55. Military personnel in Iraq face a situation far more daunting than the "everyday"— albeit considerable—problems faced by domestic law enforcement. The exigencies are more pressing, the stakes higher, and the pre-existing systems more rudimentary than they would be in domestic circumstances. If, as occurred here, Iraqi authorities bring a suspected insurgent to the attention of United States military personnel, those military personnel must take immediate action. Suspected insurgents, once released, can disappear into a very deadly woodwork. Military personnel must therefore have the latitude to detain such individuals immediately and to hold them pending investigation. Accordingly, the ability of military personnel to detain on their own authority individuals detained on the field of battle pending investigation—even a lengthy investigation—is critical. *Cf. Moyer v. Peabody*, 212 U.S. 78, 82-86 (1909) (upholding detention of individual without judicial review for over two months during insurrection). Detaining plaintiff pending further investigation, even in the absence of the sort of preliminary judicial review required in the domestic law enforcement context, violated no Fourth Amendment right.

> **c.    Plaintiff has failed to plead any facts to support his assertion of an unreasonable search.**

The final component of plaintiff's Fourth Amendment claim is his assertion that military personnel "conduct[ed] an unreasonable search of his person." Compl. ¶ 81(c).[13] This Court should dismiss this component of the claim because plaintiff has failed utterly to allege any facts to support it. To survive a Rule 12(b)(6) motion to dismiss, plaintiff must do more than offer

---

[13]    Plaintiff's assertion that the military "unreasonably fail[ed] to promptly release him, *see* Compl. ¶ 81(d), is addressed in conjunction with plaintiff's Fifth Amendment claim. *See infra* Part II.B.2.

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell*

*Atl.*, 127 S. Ct. at 1964-65. A "blanket assertion" of entitlement to relief does not satisfy even

the notice pleading standard, for "[w]ithout some factual allegation in the complaint, it is hard to

see how a claimant could satisfy the requirement of providing not only fair notice of the nature of

the claim, but also grounds on which the claim rests." *Id.* at 1965 n.3 (internal quotation marks

omitted).

Yet a blanket assertion of "unreasonable searches of his person" is all plaintiff offers.

Although the complaint discusses a search of plaintiff's *apartment*, *see* Compl. ¶ 38, the

complaint is devoid of any factual allegation of any search of plaintiff's *person*.[14] The complaint

does not allege any facts from which this Court could ascertain when any searches of plaintiff's

person were conducted, by whom they were conducted, or in what context they were conducted.

Nor does the complaint allege what these "unreasonable searches" involved. In the absence of

any such factual allegations, defendants lack any notice of the grounds upon which plaintiff's

claim rests, and this Court cannot assess the constitutionality of those searches. Therefore, this

Court should dismiss that component of plaintiff's claim.

> **d.    Even if this Court were to find a Fourth Amendment violation, qualified immunity would still bar damages claims because the law governing detention of individuals in foreign war zones was not clearly established.**

As discussed above, qualified immunity bars suit even when a constitutional violation

occurs unless the contours of the right asserted by plaintiff were sufficiently clear that a

reasonable official would understand that his actions were unconstitutional given the "specific

---

[14]    The plaintiff alleges a search of his associate, *see* Compl. ¶ 32, but plaintiff lacks standing
to challenge this search. *See Conn v. Gabbert*, 526 U.S. 286, 292-93 (1999).

context" he confronted. *Scott*, 127 S. Ct. at 1774. At the core of qualified immunity doctrine is a recognition that it is often "difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Saucier*, 533 U.S. at 205. The Supreme Court has recognized that this difficulty is especially acute, and the requirement of context-specificity especially important, in cases involving standards—such as the Fourth Amendment's requirement of reasonableness—that "are cast at a high level of generality." *Brousseau*, 543 U.S. at 199.

The general Fourth Amendment test of "reasonableness" gave no clear guidance in the situation presented by this case. The case law does not clearly define what protections, if any, the Fourth Amendment affords to United States citizens abroad. *United States v. Bin Laden*, 126 F. Supp. 2d 264, 270-71 (S.D.N.Y. 2000) (considering searches of United States citizen in Kenya and concluding that "the extent of the Fourth Amendment protection . . . is unclear"); *see also United States v. Boynes*, 149 F.3d 208, 209, 212 (3d Cir. 1998) (reserving questions whether Fourth Amendment applied to searches by United States law enforcement agents of United States citizens' property in foreign countries and whether standard other than probable cause applies). Compounding this uncertainty is the fact that plaintiff was detained not just in a foreign country, but in a foreign war zone, where the military's latitude to act is necessarily at its broadest. *See Hamdi*, 542 U.S. at 531; *North Dakota v. United States*, 495 U.S. at 443; *Egan*, 484 U.S. at 530. Given this context, the actions of which plaintiff complains violated no Fourth Amendment right that was clearly established.

3.    **Qualified immunity bars plaintiff's claim for damages under the Fifth Amendment's Due Process Clause because he has not alleged a violation of any clearly established Fifth Amendment right.**

The plaintiff's Fifth Amendment due process claim amounts to three assertions: (1) that the length of the plaintiff's detention was unconstitutional; (2) that the proceeding used to ascertain his status was marred by various procedural deficiencies; and (3) that his access to family members and loved ones was unduly limited. *See* Compl. ¶ 70. The individual defendants are entitled to qualified immunity from each of these asserted bases for liability.

a.    **The length of plaintiff's detention did not violate due process.**

Given the context in which it occurred, plaintiff's detention of fifty-five days was not so lengthy as to violate due process.[15] To violate due process, the length of detention must be so excessive as to "shock the conscience." *United States v. Salerno*, 481 U.S. 739, 746 (1987). Governmental interests in safety and order can override an individual's interest in liberty in a variety of situations. *Id.* at 748. In particular, "in times of war or insurrection"— both of which were present in Iraq in 2005—"society's interest is at its peak" and "the Government may detain individuals whom the government believes to be dangerous." *Id.* at 748. Such circumstances

---

[15]    Plaintiff attempts to contest the length of his detention under the Fourth Amendment. *See* Compl. ¶ 81(a), (d). The Supreme Court has not clearly defined the point at which an initial seizure subject to the Fourth Amendment ends and the subsequent detention is then governed by the Fifth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). The lack of precedent governing military detention in a foreign war zone only exacerbates this lack of clarity. However, most courts analyze challenges related to detention after an initial seizure under the Fifth Amendment, not the Fourth Amendment. *See Baker v. McCollan*, 443 U.S. 137, 144-45 (1979) ("We may even assume, *arguendo*, that . . . mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'"); *Goldberg v. Hennepin County*, 417 F.3d 808, 810-11 (8th Cir. 2005) ("Claims alleging the excessive detention of one who has established the right to be released are typically analyzed under the Due Process Clause."); *Green v. Baca*, 306 F. Supp. 2d 903, 909-10 n.35 (C.D. Cal. 2004) (holding claim of entitlement to release after reason for detention has ended was governed by Fifth Amendment due process).

rarely obtain in the modern United States, but in an example of latitude accorded executive officers in areas experiencing active war and insurrection, the Supreme Court in *Moyer v. Peabody*, 212 U.S. at 82, approved the detention of an individual for over two months within the United States without probable cause or judicial review because the detention was justified by "the necessities of the moment" in the context of an ongoing insurrection.

In this case, the length of plaintiff's detention was well in keeping with the exigencies of ongoing hostilities in Iraq and the need to ascertain fully and accurately his true status. Plaintiff alleges that he was detained on May 17, 2005, when Iraqi officials found items commonly used in improvised explosive devices in the car in which he was traveling with an Iranian national. *See* Compl. ¶ 25. Government agencies first had to complete an investigation in two different countries—a task plaintiff concedes was not completed until June 15, 2005. *See id.* ¶¶ 38-40. Following analysis of the information gathered by the investigation, an appropriate tribunal then had to be arranged. *See id.* at ¶¶ 48-52. Once the tribunal had assessed plaintiff's case, military personnel took only six days to review the decision and to make arrangements to release plaintiff. *Id.* ¶ 56. The time it took to complete these tasks in this context hardly "shocks the conscience."

Even if this Court were to determine in hindsight that the length of plaintiff's detention violated due process, the context of dealing with a suspected insurgent during ongoing hostilities in a foreign country precludes the conclusion that such a violation would have been so clear as to overcome qualified immunity. Due process is "not . . . subject to mechanical application in unfamiliar territory." *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998). Rather, any due process inquiry "demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id.* Even when an individual has been detained in the United States, where authorities can undertake extensive pre-arrest investigation and resort to an

29

established infrastructure for determining the propriety of detention and arranging release, courts

have refused to draw hard-and-fast rules regarding how long is too long.  *See, e.g.*, *United States*

*v. El-Hage*, 213 F.3d 74, 76 (2d Cir. 2000) (per curiam) ("[E]xactly how long such detention may

extend before violating due process limits . . . has not been fixed in the law."); *United States v.*

*Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988) ("[T]he due process limit on the length of pretrial

detention requires assessment on a case-by-case basis."); *cf. Zadvydas v. Davis*, 533 U.S. 678,

701 (2001) (setting six months as presumptively constitutional period for detention of aliens in

the United States pending arrangements for removal).  Because the law provides no clear

boundaries even in the context of domestic detention, and because the circumstances of detention

in this case were quite different from the usual domestic situation, qualified immunity bars any

claim based on the length of plaintiff's detention.

> **b.**    **The procedures used to determine plaintiff's status did not
> violate due process.**

Plaintiff next contends that the procedure used to ascertain his status was marred by lack

of access to counsel and an inability to confront all the evidence against him.  *See* Compl.

¶ 70(a), (c).  The significance of these alleged procedural defects is unclear given the result

reached in the proceeding, namely, a recommendation that plaintiff be released.  *See* Compl.

¶ 53.  In any event, the proceeding violated no due process rights, let alone clearly established

due process rights.  The closest guidance on the procedural requirements of a hearing to

determine whether a United States citizen is an enemy combatant comes from the Supreme

Court's plurality opinion in *Hamdi v. Rumsfeld*, 542 U.S. at 529.  In *Hamdi*, the plurality turned

to the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), which requires courts to

"weigh[] 'the private interest that will be affected by the official action' against the

Government's asserted interest, 'including the function involved' and the burdens the Government would face in providing greater process." *Hamdi*, 542 U.S. at 529 (quoting *Mathews*, 424 U.S. at 335). Applying this test, the plurality weighed the detainee's liberty interest against the "weighty and sensitive governmental interests in ensuring that those who have in fact fought with the enemy during a war do not return to battle against the United States" and the "practical difficulties that would accompany a system of trial-like process." *Id.* at 529-32. The plurality concluded that due process required that "a citizen-detainee seeking to challenge his classification must receive notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." *Id.* at 533.

In this case, the *Mathews* balancing test permits proceedings even more streamlined than those outlined in *Hamdi*. Whereas the detainee in *Hamdi* was held within the United States, *Hamdi*, 542 U.S. at 511, the plaintiff in this case was detained in a foreign nation in the midst of ongoing hostilities, *cf. Reid*, 354 U.S. at 33-34 (reaffirming broad power of military officials over individuals apprehended on the field of battle). The limited resources and pressing security concerns of operations in a war zone severely limit the options available to military officials. Moreover, the interests highlighted by the *Hamdi* plurality—that "military officers who are engaged in the serious work of waging battle would be unnecessarily and dangerously distracted by litigation half a world away" and that "discovery into military operations would both intrude on the sensitive secrets of national defense and result in a futile search for evidence buried under the rubble of war," 542 U.S. at 531-32—are far stronger in a situation involving determinations made in the foreign war zone itself.

In any event, plaintiff received every protection envisioned by the *Hamdi* plurality, i.e.,

31

"notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." *Id.* at 533. Plaintiff received notice that he would be subject to a military hearing. *See* Compl. ¶ 48. He appeared before a military tribunal, *see id.* ¶ 49, which the *Hamdi* plurality explicitly recognized could meet the requirements of due process, *see Hamdi*, 542 U.S. at 538. And he was allowed access to evidence that did not implicate security concerns and witnesses that were reasonably available. *See* Compl. ¶ 52.

Although plaintiff repeatedly complains that he was not provided with an attorney, due process imposed no such requirement in these circumstances. Due process does not ineluctably require an attorney for every proceeding, even when physical liberty is at stake, especially when concern for the effectiveness of military operations counsels against such a requirement. *See Middendorf v. Henry*, 425 U.S. 25, 43 (1976). The *Hamdi* plurality did not indicate that detainees appearing before status boards *in the United States*, where attorneys are widely available, must have access to an attorney, much less that detainees appearing before status boards in wartime Iraq must have such access.[16] Even if the plaintiff had demonstrated that some sort of prejudice would accrue to citizen-detainees because they appear before status boards without an attorney, due process simply does not require such a measure.

The plaintiff also complains that he was not allowed access to all the evidence used against him at the hearing. The *Hamdi* plurality, however, contemplated that due process for detainee status hearings would not replicate the full complement of evidentiary rules and presumptions common to criminal trials. *See* 542 U.S. at 533-34. Detainee status boards are

---

[16]    The *Hamdi* plurality did indicate that the detainee at issue would have the right to counsel in connection with ongoing *habeas* proceedings, *Hamdi*, 542 U.S. at 539, but access to counsel in *habeas* proceedings is not at issue in this case.

constituted to determine whether an individual is an ongoing threat to the United States, allied forces, or Iraqi citizens. Turning over sensitive and confidential evidence to such individuals while still in Iraq and in the midst of ongoing hostilities would present an intolerable security risk. *Cf. Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491-92 (1999) (recognizing risk of disclosing sensitive foreign-policy materials).

At a minimum, the procedures called for by the plaintiff were not so clearly required as to support a denial of qualified immunity. When the "area [of law] is one in which the result depends very much on the facts of each case," a right will not be clearly established unless extant cases "squarely govern." *Brosseau*, 543 U.S. at 201. Procedural due process is a "flexible concept." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 (1985). Therefore, "[a]pplying the Due Process Clause is . . . an uncertain enterprise," *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 24-25 (1981), and "the law regarding procedural due process claims can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent," *Brewster v. Bd. of Educ.*, 149 F.3d 971, 983 (9th Cir. 1998) (internal quotation marks omitted). No precedent holds that detainees taken into custody in a battle zone and held for purposes of determining their combatant status are entitled to an attorney and an opportunity to see all the evidence against them, no matter how sensitive. Therefore, government officials could not have had fair notice that the *Mathews* balancing test would have dictated those procedures, and this Court should dismiss on qualified immunity grounds the plaintiff's due process claim insofar as it is based on the procedures used to ascertain his status.

           **c.**      **The limits on plaintiff's access to family members did not violate due process.**

The final component of plaintiff's due process claim focuses on the limits imposed on his

access to "family members and loved ones" during his detention.  *See* Compl. ¶ 70(d).[17]  In

particular, plaintiff complains that his telephone calls to family members were "brief" and

"monitored."  Compl. ¶¶ 8, 44-46.  These limits did not violate due process.

At the very most, plaintiff can claim only those entitlements that would result from

application of the general test used to assess conditions of confinement in domestic detention

settings.  *See Block v. Rutherford*, 468 U.S. 576, 585 (1984) (assessing limits on detainee's

contact with family members by applying test articulated in *Bell v. Wolfish*, 441 U.S. 520

(1979)).  That test asks "whether the challenged condition, practice, or policy constitutes

punishment."  *Id.* at 583.  "Not every disability imposed during pretrial detention amounts to

'punishment' in the constitutional sense," and "the fact that such detention interferes with the

detainee's understandable desire to live as comfortably as possible and with as little restraint as

possible during confinement does not convert the conditions or restrictions of detention into

'punishment.'"  *Bell*, 441 U.S. at 537.  In the absence of an "expressed intent to punish on the

part of detention facility officials"—an expressed intent nowhere alleged in the complaint—the

determination whether a condition constitutes punishment "will turn on whether an alternative

purpose to which [the restriction] may rationally be connected is assignable for it, and whether it

appears excessive in relation to the alternative purpose assigned [to it]."  *Id.* at 538-39

(alterations in *Bell*) (internal quotation marks omitted).  Even in domestic detention facilities,

---

[17]    Plaintiff's complaint includes a number of allegations related to the conditions of his
confinement.  *See* Compl. ¶¶ 7-8, 27-32, 33-35.  However, he does not assert any due process
claim based on those allegations.  *See* Compl. ¶ 70.  Nor could he.  Plaintiff's conclusory
assertions of liability are not remotely sufficient to link senior-level military officials to alleged
instances of mistreatment by individual guards.  *See supra* Part II.B.1; *see also Bell Atl.*, 127 S.
Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative
level.").

government employees are accorded "'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Block*, 468 U.S. at 585 (quoting *Bell*, 441 U.S. at 547). Accordingly, courts have consistently upheld limits on detainees' access to phones and monitoring of detainees' phone calls. *See, e.g.*, *United States v. Van Poyck*, 77 F.3d 285, 291 (9th Cir. 1996); *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989); *United States v. Willoughby*, 860 F.2d 15, 21 (2d Cir. 1988).

The limits placed on plaintiff's telephone access arose from the need to manage a detention facility housing suspected insurgents in wartime Iraq. In this situation, the practical difficulties of running a detention facility are even less "susceptible of easy solutions," *Bell*, 441 U.S. at 547, than the difficulties routinely encountered in domestic detention facilities. Unfettered real-time communications between detainees and family members could result in critical information being disseminated outside the detention facility or impermissible information reaching detainees. *See Al-Odah v. United States*, 406 F. Supp. 2d 37, 45-46 (D.D.C. 2005). As a result, conversations by suspected insurgents must be "carefully monitor[ed] . . . to ensure that such conversations [do] not create a security risk." *Id.* at 45-46. Because such monitoring "occup[ies] considerable government time, money, and resources," *id.*—none of which are plentiful in wartime Iraq—detainees' telephone phone access is necessarily quite limited. Thus, the limits complained of by plaintiff did not violate due process, much less any clearly established aspect of due process.

## III.   THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR DAMAGES UNDER THE GENEVA CONVENTIONS AND THE LAW OF NATIONS.

Plaintiff also claims damages for alleged violations of the Geneva Conventions and the

35

law of nations. *See* Compl., prayer for relief (b). This Court should dismiss those claims because neither the Geneva Conventions nor the law of nations give rise to a private right of action for damages, and because even if they did, the defendants would be absolutely immune from such claims.

### A.    Plaintiff lacks a private right of action for damages under the Geneva Conventions.

Plaintiff lacks a viable damages action under the Geneva Conventions for two reasons. First, the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 5, 120 Stat. 2600, 2631-32, explicitly forecloses any civil action based on the provisions of the Geneva Conventions:

> No person may invoke the Geneva Conventions or any protocols thereto in any habeas corpus or other civil action or proceeding to which the United States, or a current or former officer, employee, member of the Armed Forces, or other agent of the United States is a party as a source of rights in any court of the United States or its States or territories.

Here, the plaintiff specifically "invoke[s]" the Geneva Convention in a civil action for damages against current and former agents of the United States. *See* Compl. ¶¶ 15-18, 101-03. Therefore, the MCA precludes this claim.

Second, even without the MCA, the plaintiff has no private right of action for damages for alleged violations of the Geneva Conventions. An individual may assert a claim for treaty violations only if the treaty explicitly or implicitly provides a right of action to private individuals. *See Comm. of U.S. Citizens Living in Nicar. v. Reagan*, 859 F.2d 929, 937-38 (D.C. Cir. 1988); *In re Iraq*, 479 F. Supp. 2d at 114. Courts have consistently held that the Geneva Conventions evidence no such intent and therefore fail to provide a private right of action. *See Johnson v. Eisentrager*, 339 U.S. 763, 789 n.14 (1950) (noting that "obvious scheme" of

Conventions requires enforcement through state-to-state contacts); *Hamdan v. Rumsfeld*, 415 F.3d 33, 38-40 (D.C. Cir. 2005) (holding that Geneva Conventions are not judicially enforceable), *rev'd on other grounds*, 126 S. Ct. 2749 (2006); *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 808 (D.C. Cir. 1984) (Bork, J., concurring) (holding that the Third and Fourth Geneva Conventions do not provide a private right of action); *Huynh Thi Anh v. Levi*, 586 F.2d 625, 629 (6th Cir. 1978) (holding that the Fourth Geneva Convention does not provide a private right of action); *In re Iraq*, 479 F. Supp. 2d at 115-17 (holding that the Fourth Geneva Convention does not provide a private right of action).  Thus, this Court should dismiss plaintiff's claim because he has no cause of action.

> **B.**     **Plaintiff lacks a private right of action for damages under the law of nations.**

Plaintiff also seeks damages for purported violations of the law of nations.  *See* Compl. ¶¶ 91-95.  The law of nations, also known as customary international law, does not derive from a single source, but arises from the "customs and uses of civilized nations."  *See Bancoult v. McNamara*, 370 F. Supp. 2d 1, 5 n.3 (D.D.C. 2004), *aff'd*, 445 F.3d 427 (D.C. Cir. 2006), *cert. denied*, 127 S. Ct. 1125 (2007).  As such, it is "a diffuse and often highly uncertain body of norms whose force and enforceability vary greatly even in the international sphere; and its status in our domestic courts is even more qualified."  *Igartúa-de la Rosa v. United States*, 417 F.3d 145, 151 (1st Cir. 2005) (en banc).  Accordingly, courts have uniformly held that the law of nations does not provide a private right of action for United States citizens.  *See Ungaro-Benages v. Desdner Bank AG*, 379 F.3d 1227, 1232 n.7 (11th Cir. 2004); *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1174 n.1 (D.C. Cir. 1994); *Tel-Oren*, 726 F.2d at 799, 809-19 (Bork, J., concurring); *Handel v. Artukovic*, 601 F. Supp. 1421, 1426-27 (C.D. Cal. 1985).  Therefore, this Court should dismiss plaintiff's claim for damages under the law of nations because he lacks a

cause of action.

**C.    Absolute immunity bars plaintiff's claims for damages under the Geneva Conventions and the law of nations.**

Even if a cause of action for damages existed, plaintiff's damages claims under the Geneva Conventions and the law of nations would fail. Federal employees are absolutely immune from such claims for damages. Instead, the United States must be substituted as a defendant on those claims. Once the United States has been substituted as a defendant, the claims must be dismissed because they are barred by sovereign immunity.

**1.    This Court should substitute the United States as defendant on plaintiff's claims for damages under the Geneva Conventions and the law of nations.**

The Federal Employees Liability Reform and Tort Compensation Act, commonly known as the Westfall Act,[18] grants federal employees absolute immunity from most claims for damages arising from acts within the scope of federal employment. *Osborn v. Haley*, 127 S. Ct. 881, 887 (2007); *Smith*, 499 U.S. at 163. An action under the Federal Tort Claims Act ("FTCA") for

> personal injury . . . resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is *exclusive* of *any other* civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim.

28 U.S.C. § 2679(b)(1) (emphasis added). "*Any other* civil action . . . against the employee . . . is *precluded*." *Id.* (emphasis added). The purpose of this provision is "to relieve covered employees from the cost and effort of defending the lawsuit, and to place those burdens on the Government's shoulders." *Osborn*, 127 S. Ct. at 900-01. Upon certification by the Attorney

---

[18]    The name "Westfall Act" derives from *Westfall v. Erwin*, 484 U.S. 292 (1988), the decision that Congress legislatively overrode in granting absolute immunity to federal employees. *See United States v. Smith*, 499 U.S. 160, 163 (1991).

General's designee that the employee was acting with the scope of employment when the claim

arose, the action against the employee "shall be deemed an action against the United States . . . ,

and the United States shall be substituted as the party defendant." *Id.* § 2679(d)(1).

This immunity provision permits only two exceptions, neither of which is applicable to

the plaintiff's claims under the Geneva Conventions or the law of nations. No substitution is

authorized for an action "brought for a violation of the Constitution of the United States" or an

action "brought for a violation of a statute of the United States under which such action against

an individual is otherwise authorized." *See id.* § 2679(b)(2); *Smith*, 499 U.S. at 166-67. These

limited exceptions do not permit claims against individual federal employees for alleged

violations of the Geneva Conventions or the law of nations because neither constitutes a federal

constitutional provision or a federal statute. *See, e.g.*, *Harbury v. Hayden*, 444 F. Supp. 2d 19,

37-38 (D.D.C. 2006) ("International law, however characterized (i.e., the law of nations, federal

common law), falls outside of these clearly enumerated exceptions. As such, an alleged violation

of international law cannot prevent a Westfall Act certification from applying."), *appeal*

*docketed*, No. 06-5282 (D.C. Cir. Sept. 26, 2006).[19] Courts may not infer further exceptions.

*Smith*, 499 U.S. at 166-67. Thus, so long as the acts and omissions alleged fall within the

defendants' scope of employment, the defendants are absolutely immune from suit.

In this case, the Attorney General's designee has certified that the employee was acting

---

[19]     *See also In re Iraq*, 479 F. Supp. 2d at 112-113 (holding that Geneva Conventions do not
fall within Westfall Act's exception for statutes); *Rasul v. Rumsfeld*, 414 F. Supp. 2d 26, 31-38
(D.D.C. 2006) (substituting United States on claim for alleged violations of the Geneva
Conventions), *appeal argued*, Nos. 06-5209 & 06-5222 (D.C. Cir. Sept. 14, 2007); *Bancoult*, 370
F. Supp. 2d at 7-8; *Schneider v. Kissinger*, 310 F. Supp. 2d 251, 267 (D.D.C. 2004) ("The
Westfall Act explicitly makes an exception for 'a violation of a statute of the United States[,]'
not federal common law or the law of nations."), *aff'd on other grounds*, 412 F.3d 190 (D.C. Cir.
2005), *cert. denied*, 547 U.S. 1069 (2006).

with the scope of employment when the claim arose. *See* Tab A. This certification is "*prima facie* evidence that the employee was acting within the scope of his employment." *Council on Am. Islamic Relations v. Ballenger*, 444 F. 3d 659, 662 (D.C. Cir. 2006) (per curiam). Moreover, plaintiff affirmatively alleges that the individual defendants were crafting and carrying out the policies of their employer, the United States, *see* Compl. ¶¶ 4, 14, 16-17, and asserts that his alleged harms flow from policies of the "United States military, together with other U.S. government agencies," *id.* ¶¶ 59-67; *see also id.* ¶ 10 (asserting injuries incurred "pursuant to our government's policy and practice"). *Cf. In re Iraq*, 479 F. Supp. 2d at 114 (holding that plaintiffs conceded scope of employment "by describing the defendants in terms of their command and control over United States military personnel and responsibility for detainees"). Therefore, plaintiff's claims under the Geneva Conventions and the law of nations must be deemed an action against the United States, and the United States substituted as the party defendant. *See* 28 U.S.C. § 2679(d)(1).

> **2.    This Court should immediately dismiss any damages claims against the United States because plaintiff has failed to exhaust his administrative remedies and because his alleged injuries occurred in a foreign country.**

Once this Court has substituted the United States as a party, it should immediately dismiss plaintiff's claims against the United States based on sovereign immunity. *See Smith*, 499 U.S. at 165 (holding that Westfall Act substitution must occur even when claims will immediately be subject to dismissal under FTCA). First, the FTCA requires a plaintiff to exhaust his administrative remedies before a federal court can exercise jurisdiction over a lawsuit. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). In

this case, plaintiff has failed to exhaust his administrative remedies.  Second, plaintiff's claims

are barred by the FTCA's foreign country exception, 28 U.S.C. § 2680(k), which "bars all claims

based on any injury suffered in a foreign country, regardless of where the tortious act or omission

occurred," *Sosa*, 542 U.S. at 712.  Plaintiff's claim is based on injuries suffered in Iraq, a foreign

country.  *See* Compl. ¶¶ 4-8.  Thus, having substituted the United States as a party, this Court

should then dismiss plaintiff's claims under the Geneva Conventions and the law of nations.

## IV.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR A DECLARATORY JUDGMENT AGAINST THE INDIVIDUAL DEFENDANTS.

Finally, plaintiff seeks "[a]s to all defendants" a declaration that alleged "acts, policies,

patterns, or practices" violate the Constitution and various provisions of international law.  *See*

Compl., prayer for relief (a).  Plaintiff's declaratory judgment claim fails with respect to all

defendants for all the reasons discussed in the United States' motion to dismiss.  *See* Mem. in

Supp. of United States' Mot. To Dismiss at 3-15.  And with respect to the individual defendants,

plaintiff's declaratory judgment claim fails for an additional reason: Declaratory relief designed

to affect the conduct of a government entity is available only in an official-capacity suit.  *See In

re Iraq*, 479 F. Supp. 2d at 118-19; *Sudnick v. Dep't of Def.*, 474 F. Supp. 2d 91, 100 (D.D.C.

2007); *Hatfill v. Gonzales*, No. 03-1793, 2007 WL 842967, at *2-8 (D.D.C. Mar. 16, 2007);

*accord Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004); *Kirby v. City of Elizabeth*,

388 F.3d 440, 452 n.10 (4th Cir. 2004); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989).  An

individual federal employee is not the proper defendant in a claim for injunctive or declaratory

relief because he or she has no power to affect government policy in his or her individual

capacity, especially when that employee has since transferred to a different position or left

government service altogether.  *See In re Iraq*, 479 F. Supp. at 118-19; *Sudnick*, 474 F. Supp. at

100; *accord Scott v. Flowers*, 910 F.2d 201, 213 n.25 (5th Cir. 1990).  Plaintiff has sued

Secretary Rumsfeld and Generals Casey and Brandenburg in their respective individual

capacities only.  *See* Compl. ¶¶ 14, 16, 17.  Moreover, plaintiff concedes that Secretary Rumsfeld

"is no longer the Secretary of Defense," *id.* ¶ 14, and that General Casey "is no longer

commanding armed forces in Iraq," *id.* ¶ 16.  Therefore, for this additional reason, this Court

should dismiss plaintiff's declaratory judgment claim against the individual defendants.

## CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiff's claims against the

individual defendants under Federal Rule of Civil Procedure 12(b)(1), (2), and (6).

Dated:  September 17, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

TIMOTHY P. GARREN
Director, Torts Branch

MARY HAMPTON MASON (DC Bar # 4274671)
Senior Trial Attorney, Torts Branch


*/s/ Zachary C. Richter*
ZACHARY C. RICHTER (Texas Bar # 24041773)
Trial Attorney, Torts Branch
UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202)616-4199 (phone)
(202)616-4314 (fax)
Zachary.Richter@usdoj.gov

PAUL E. WERNER
Law Student Intern, Torts Branch

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing document on counsel for plaintiff through

this Court's Electronic Case Filing system pursuant to LCvR 5.4(d)(1).

Dated: September 17, 2007

_____*/s/ Zachary C. Richter*_____
ZACHARY C. RICHTER
Attorney for Defendants

**Tab A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CYRUS KAR, | |
| Plaintiff, | |
| v. | No. 07-cv-00984-JR |
| DONALD RUMSFELD, et al., | |
| Defendants. | |

## CERTIFICATION OF SCOPE OF EMPLOYMENT

I, Timothy P. Garren, Director, Torts Branch, Civil Division, United States Department of Justice, acting pursuant to 28 U.S.C. § 2679(d)(1), and by virtue of the authority vested in me by 28 C.F.R. § 15.4, hereby certify that I have read the Complaint in this action. On the basis of the information now available with respect to the allegations therein, I find that former Secretary of Defense Donald Rumsfeld, General George W. Casey, and General William H. Brandenburg were acting within the scope of their employment as employees of the United States at the time of the conduct alleged in the complaint.

Dated: 9/12/07

TIMOTHY P. GARREN
Director, Torts Branch
UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    |
CYRUS KAR,                                           |
                                                    |
              Plaintiff,                             |
                                                    |
v.                                                   |     No. 07-cv-00984-JR
                                                    |
DONALD RUMSFELD, et al.,                             |
                                                    |
              Defendants.                            |
_____|


**ORDER**

UPON CONSIDERATION of the Individual Defendants' Motion To Dismiss, and the grounds stated therefor, it is on this _____ day of _____, 20___, hereby

ORDERED that said motion should be and hereby is granted; and it is

FURTHER ORDERED that plaintiff's claims against former Secretary of Defense Donald Rumsfeld, General George Casey, and General William Brandenburg are DISMISSED WITH PREJUDICE.


                              _____
                              UNITED STATES DISTRICT JUDGE


Zachary C. Richter                    Arthur B. Spitzer
United States Department of Justice   American Civil Liberties Union
Civil Division                        1400 20th St. NW
P.O. Box 7146, Ben Franklin Station   Suite 119
Washington, D.C. 20044                Washington, D.C. 20036