IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
|
CYRUS KAR,                            |
|
            Plaintiff,                |
|
v.                                    |        No. 07-cv-00984-JR
|
DONALD RUMSFELD, et al.,              |
|
            Defendants.               |
_____|

## UNITED STATES' MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), the United States moves to

dismiss plaintiff's claim for a declaratory judgment against Secretary of Defense Robert Gates in

his official capacity, which runs against the United States, because that claim is not justiciable.

The grounds for dismissal are set forth in the accompanying memorandum of points and

authorities.  Pursuant to Local Civil Rule 7(c), a proposed order is attached.

Dated:  September 17, 2007

                              Respectfully submitted,

                              PETER D. KEISLER
                              Assistant Attorney General

                              TIMOTHY P. GARREN
                              Director, Torts Branch

                              MARY HAMPTON MASON (DC Bar # 4274671)
                              Senior Trial Attorney, Torts Branch


                              */s/ Zachary C. Richter*
                              ZACHARY C. RICHTER (Texas Bar # 24041773)
                              Trial Attorney, Torts Branch
                              UNITED STATES DEPARTMENT OF JUSTICE

CIVIL DIVISION
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202)616-4199 (phone)
(202)616-4314 (fax)
Zachary.Richter@usdoj.gov

PAUL E. WERNER
Law Student Intern, Torts Branch

ATTORNEYS FOR DEFENDANTS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CYRUS KAR,

      Plaintiff,

v.                                                    No. 07-cv-00984-JR

DONALD RUMSFELD, et al.,

      Defendants.

---

**MEMORANDUM IN SUPPORT OF
UNITED STATES' MOTION TO DISMISS**

PETER D. KEISLER
Assistant Attorney General

TIMOTHY P. GARREN
Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Attorney, Torts Branch

ZACHARY C. RICHTER
Trial Attorney, Torts Branch

PAUL E. WERNER
Law Student Intern, Torts Branch

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION

# TABLE OF CONTENTS

Table of Authorities............................................................ i

Background..................................................................... 1

Argument...................................................................... 3

I.      THIS COURT SHOULD DISMISS PLAINTIFF'S DECLARATORY
        JUDGMENT CLAIM BECAUSE HE LACKS ARTICLE III STANDING
        TO BRING THAT CLAIM................................................. 3

II.     THIS COURT SHOULD DISMISS PLAINTIFF'S DECLARATORY
        JUDGMENT CLAIM BECAUSE PLAINTIFF HAS FAILED TO SATISFY
        THE PRECONDITIONS FOR EQUITABLE RELIEF............................ 9

III.    THIS COURT SHOULD DISMISS PLAINTIFF'S DECLARATORY
        JUDGMENT CLAIM AS BEYOND THIS COURT'S DISCRETION.............. 10

IV.     THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR
        DECLARATORY JUDGMENT UNDER THE LAW OF NATIONS AND
        THE GENEVA CONVENTIONS FOR LACK OF JURISDICTION.............. 13

Conclusion.................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Mattis*, 431 U.S. 171 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bancoult v. McNamara*, 445 F.3d 427 (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*C&E Servs., Inc. v. D.C. Water & Sewer Auth.*, 310 F.3d 197 (D.C. Cir. 2002). . . . . . . . . . . . . 13

\* *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 8, 9, 10

*Comm. of U.S. Citizens Living in Nicar. v. Reagan*, 859 F.2d 929 (D.C. Cir. 1988). . . . . . . . . 14

*Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134 (D.C. Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . 4

\* *Fair Employment Council of Greater Wash., Inc. v. BMC Mtkg. Corp.*,
   28 F.3d 1268 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 7

*Friends of the Earth, Inc. v. Laidlaw Env'l Servs. (TOC), Inc.*, 528 U.S. 167 (2000). . . . . . . . . 3

*Gallucci v. Chao*, 374 F. Supp. 2d 121 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Getty Images News Servs. Corp. v. Dep't of Def.*, 193 F. Supp. 2d 112 (D.D.C. 2002). . . 7, 12, 13

*Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9 (D.D.C. 2001). . . . . . 4

\* *Haase v. Sessions*, 835 F.2d 902 (D.C. Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7, 8

*Handel v. Artukovic*, 601 F. Supp. 1421 (C.D. Cal. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hamdan v. Rumsfeld*, 415 F.3d 33 (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hein v. Freedom From Religion Found., Inc.*, 127 S. Ct. 2553 (2007). . . . . . . . . . . . . . . . . . . . . 3

*Hewitt v. Helms*, 482 U.S. 755 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Huynh Thi Anh v. Levi*, 586 F.2d 625 (6th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

\* *In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d 85 (D.D.C. 2007). . . . . . . . . . . 8, 9, 12, 14, 15

*Johnson v. Eisentrager*, 339 U.S. 763 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kentucky v. Graham*, 473 U.S. 159 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . 2

*Lampkin v. Connor*, 360 F.2d 505 (D.C. Cir. 1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lance v. Coffman*, 127 S. Ct. 1194 (2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).. . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

*MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007).. . . . . . . . . . . . . . . . . . . . . . . . 10

*Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423 (D.C. Cir. 1996). . . . . . . . . . 4

*Nw. Airlines v. FAA*, 795 F.2d 195 (D.C. Cir. 1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*O'Shea v. Littleton*, 414 U.S. 488 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Princz v. Fed. Republic of Germany*, 26 F.3d 1166 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . 13

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279 (D.C. Cir. 2007). . . . . 5

\* *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237 (1952).. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rizzo v. Goode*, 423 U.S. 362 (1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

\* *Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985).. . . . . . . . . . . . . . . . . . . . . 9, 11

*Schilling v. Rogers*, 363 U.S. 666 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950).. . . . . . . . . . . . . . . . . . . . . . . 13

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . 14

*United States v. Instruments, S.A., Inc.*, 807 F. Supp. 811 (D.D.C. 1992). . . . . . . . . . . . . . . 13

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United Transp. Union v. ICC*, 891 F.2d 908 (D.C. Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . 4

*Whitmore v. Arkansas*, 495 U.S. 149 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## Statutes

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 13, 14

Detainee Treatment Act of 2005, Pub. L. 109-148, §§ 1001-06, 119 Stat. 2680, 2739-44. . . . . . . 8

* Military Commissions Act of 2006, Pub. L. 109-366, § 5, 120 Stat. 2600, 2631-32. . . . . . . . . 15

## MEMORANDUM IN SUPPORT OF
## UNITED STATES' MOTION TO DISMISS

This memorandum addresses plaintiff Cyrus Kar's claim for a declaratory judgment against Secretary of Defense Robert Gates in his official capacity, which runs against the United States.[1]  Plaintiff's claims arise from his apprehension by Iraqi officials and subsequent detention by United States military personnel acting as part of the Multinational Force-Iraq ("MNF-I"). Without alleging any facts to suggest that he will again be subject to detention, plaintiff seeks a broad-ranging declaration that purported United States policies governing military detention abroad conflict with various provisions of domestic and international law.  Because plaintiff's claim is not justiciable, this Court should dismiss it under Federal Rule of Civil Procedure 12(b)(1) and (6).

## BACKGROUND

Plaintiff alleges that he is a United States citizen who traveled to Iraq to make a documentary film.  Compl. ¶ 13, 23-24.  While in Iraq, plaintiff was riding in a vehicle that was stopped by Iraqi officials at a checkpoint.  *Id.* ¶ 25.  When the Iraqi officials searched the vehicle, they found a number of washing machine timers, which are common components of improvised explosive devices.  *Id.*  The Iraqi officials then detained plaintiff and the vehicle's other occupants.  *Id.*

Plaintiff alleges that Iraqi officials later transferred him to the custody of members of the United States military in Iraq, where he was held while agents of the Federal Bureau of

---

[1]     A suit against a government official in his official capacity is another way of pleading an action against the government entity of which the officer is an agent.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

1

Investigation conducted an investigation. *Id.* ¶¶ 33-34, 36-40.[2]  Plaintiff alleges that this

detention was unnecessarily long and that he was mistreated and denied access to family

members and legal representation. *Id.* ¶¶ 42-46.  After the FBI completed its investigation,

military officials held a hearing to determine plaintiff's status. *Id.* ¶¶ 48-52.  The panel of

officials who conducted the hearing recommended plaintiff's release. *Id.* ¶¶ 53-54.  Plaintiff was

released a few days later, *id.* ¶¶ 55-56, and subsequently returned to the United States, *id.* ¶ 57.

Plaintiff first filed suit in the United States District Court for the Central District of

California. *See* Compl., *Kar v. Rumsfeld*, No. 06-4281 (C.D. Cal. filed July 7, 2006).  After the

defendants in that suit filed comprehensive motions to dismiss, plaintiff voluntarily dismissed his

claims there. *See* Notice of Voluntary Dismissal, *Kar v. Rumsfeld*, No. 06-4281 (C.D. Cal. Dec.

5, 2006).  Six months later, he filed a similar suit in this Court.  Although the complaint does not

clearly define the scope of the policies and practices plaintiff attacks, plaintiff apparently alleges

deficiencies in the procedures used to determine whom to detain; the procedures for deciding

whether to continue detention; and problems with detainees' access to family members and legal

representation. *See, e.g.*, *id.* ¶¶ 59-64.  The stated purpose of the instant suit is "to declare [the

alleged] practices unlawful." *Id.* ¶ 10.  To that end, plaintiff invokes the Declaratory Judgment

Act, 28 U.S.C. §§ 2201-02, *see id.* ¶ 11, and requests "[a]s to all defendants, a declaration that

Defendants' acts, policies, patterns, or practices alleged [in his complaint] are unlawful and

---

[2]     Plaintiff alleges that he was held in the custody of the United States military. *See, e.g.*,
Compl. ¶ 26.  That allegation is a legal conclusion that need not be accepted as true for purposes
of a motion to dismiss. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir.
1994).  Although the factual assertion that the plaintiff was physically held by members of the
United States Armed Forces is not contested for purposes of this motion, the United States forces
were acting as part of the Multinational Forces–Iraq ("MNF–I"), an international entity
comprised of forces from a number of different nations acting under international authority and at
the request of the government of Iraq.

2

violate the U.S. Constitution, treaty provisions including provisions of the Geneva Conventions, and the law of nations," *id.*, prayer for relief (a).[3]

## ARGUMENT

This Court should dismiss plaintiff's declaratory judgment claim against the United States. Plaintiff has failed to allege facts sufficient to support standing to bring such a claim or to satisfy the prerequisites for equitable relief because he has not alleged a real and imminent threat of future injury. Even if plaintiff had alleged such facts, this Court should decline to exercise its discretionary power to issue a declaratory judgment because the declaration sought by plaintiff would interfere with the conduct of foreign and military affairs and is massively overbroad. Moreover, plaintiff's attempt to invoke the law of nations and the Geneva Conventions fails for lack of subject matter jurisdiction.

## I.    THIS COURT SHOULD DISMISS PLAINTIFF'S DECLARATORY JUDGMENT CLAIM BECAUSE HE LACKS ARTICLE III STANDING TO BRING THAT CLAIM.

Article III's "case or controversy" requirement confines the power of the federal judiciary to situations in which a plaintiff has standing to seek judicial relief. *Hein v. Freedom From Religion Found., Inc.*, 127 S. Ct. 2553, 2562 (2007). A plaintiff must demonstrate standing separately for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Env'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). A plaintiff bears the burden of establishing standing "in the same way as on any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v.*

---

[3]    The Memorandum in Support of the Individual Defendants' Motion To Dismiss addresses the plaintiff's claims for damages and a declaratory judgment against the individual defendants.

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Deciding a motion to dismiss for lack of

standing therefore "involves an examination of the face of the complaint," i.e., "the theory of

injury presented in the complaint and the facts alleged in support of the claim."  *Haase v.

Sessions*, 835 F.2d 902, 907-08 (D.C. Cir. 1987).  Because a plaintiff's lack of standing deprives

the court of jurisdiction, the factual allegations of the complaint bear closer scrutiny on a motion

to dismiss for lack of standing than they would on a motion to dismiss for failure to state a claim.

*See Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C.

2001).  Although the court must accept all "allegations of facts, either historical or otherwise

demonstrable," the court may "reject as speculative allegations of future injuries," *United

Transp. Union v. ICC*, 891 F.2d 908, 912 (D.C. Cir. 1989), and need not accept legal conclusions

drawn from those facts, *see Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423,

1430 (D.C. Cir. 1996).

To demonstrate standing to seek a declaratory judgment, a plaintiff must allege a

likelihood of future injury.  *See Fair Employment Council of Greater Wash., Inc. v. BMC Mtkg.

Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994); *Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1137

n.3 (D.C. Cir. 1989).  "[P]ast wrongs do not in themselves amount to that real and immediate

threat of injury necessary to make out a case or controversy."  *City of Los Angeles v. Lyons*, 461

U.S. 95, 103-04 (1983); *see also Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *O'Shea v. Littleton*,

414 U.S. 488, 495-96 (1974).  Nor are "future *effects* from past violations" sufficient.  *Fair

Employment*, 28 F.3d at 1273 (emphasis in original).  When, as in this case, a plaintiff seeks a

declaration affecting the future conduct of the government, he must demonstrate that he is

"realistically threatened by a *repetition* of his experience."  *Lyons*, 461 U.S. at 109 (emphasis

added); *see also Fair Employment*, 28 F.3d at 1272-73.  "The injury requirement will not be

satisfied simply because a chain of events can be hypothesized in which the action challenged eventually leads to actual injury." *Nw. Airlines, Inc. v. FAA*, 795 F.2d 195, 201 (D.C. Cir. 1986). Rather, the asserted future injury must be "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks omitted); *see also Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1293 (D.C. Cir. 2007) (explaining that asserted injury must be "certainly impending and immediate—not remote, speculative, conjectural, or hypothetical").

In this case, the complaint is devoid of any factual allegation suggesting that plaintiff faces a "certainly impending" future injury stemming from the alleged policies he seeks to challenge or the conduct of any member of the United States military in Iraq.  Plaintiff has alleged no desire to return to Iraq, much less the sort of concrete and definite plan that would be necessary to establish standing.  *Cf. Lujan*, 504 U.S. at 564. ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.") (emphasis in original).  He has not alleged that, once there, he will travel in vehicles containing suspicious items or otherwise engage in activities likely to arouse the concern of Iraqi or MNF–I forces such that they would detain him.  *Cf. id.* at 564 n.2 (explaining that concept of imminent injury "has been stretched beyond the breaking point when . . . the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control").  Nor has he alleged that, even after the FBI has already investigated him, he would again be subject to detention pending the results of an investigation. *Cf. Fair Employment*, 28 F.3d at 1274 (holding that plaintiffs had failed to demonstrate standing where, despite allegation of discriminatory policy, they had not shown that they would again be

subject to discrimination).  In short, plaintiff has alleged no facts that would support an inference

that he is realistically threatened with application of the alleged actions and detention policies

that are the focus of his claims for declaratory relief.

The Supreme Court's decision in *City of Los Angeles v. Lyons* aptly illustrates why

plaintiff's allegations are deficient.  In *Lyons*, the plaintiff alleged that police officers who

stopped him for a traffic violation had subjected him to a chokehold.  461 U.S. at 98.  Based on

this past injury, the plaintiff sought a declaration that the police department's policy on the use of

chokeholds was unconstitutional.  *Id.*  The Court held that the plaintiff lacked standing to seek

this declaration because he had failed to establish that he would be injured by the policy in the

future.  *Id.* at 104.  The plaintiff's past injury, "while presumably affording [him] standing to

claim damages . . . , [did] nothing to establish a real and immediate threat that he would again be

stopped for a traffic violation, or for any other offense, by an officer or officers who would

illegally choke him."  *Id.* at 105.  In the absence of such a "real and immediate threat" of future

injury, the plaintiff's "assertion that he [might] again [have been] subject to an illegal chokehold

[did] not create the actual controversy that must exist for a declaratory judgment to be entered."

*Id.* at 104.  Similarly, plaintiff in this case has failed to establish that the injury he allegedly

suffered in the past is likely to recur in the future, and he has therefore failed to allege a basis for

Article III standing to seek declaratory judgment.

Plaintiff's allegations of policies or practices broadly applicable to detainees in Iraq, *see,*

*e.g.*, Compl. ¶¶ 59-66, does not remedy his failure to allege any imminent threat of injury to

himself.  An allegation of a policy or practice is insufficient to establish standing absent further

allegations that the plaintiff will be subject to that policy or practice in the future.  *See Lyons*, 461

U.S. at 106 & n.7; *Fair Employment*, 29 F.3d at 1274; *Haase*, 835 F.2d at 911.  Plaintiff cannot

6

premise standing on his own interest in seeing the government comply with the law generally, *see Lance v. Coffman*, 127 S. Ct. 1194, 1196-97 (2007) (per curiam), or his own emotional involvement in the issues at stake, *see Ashcroft v. Mattis*, 431 U.S. 171, 173 (1977) (per curiam); *Fair Employment*, 28 F.3d at 1273.  And alleged injuries suffered by detainees other than plaintiff are irrelevant, because "to satisfy the requirements of Article III, [plaintiffs] must allege that *they themselves* are likely to suffer future injury."  *See id.* at 1273 (emphasis added).  Indeed, the broad scope of plaintiff's requested declaration, which on its face extends to all detainees abroad, regardless of individual circumstances, *see* Compl. ¶¶ 59-64, only highlights the conjectural and contingent nature of plaintiff's claim.  *See Getty Images News Servs. Corp. v. Dep't of Def.*, 193 F. Supp. 2d 112, 118 (D.D.C. 2002) (refusing to "adjudicate hypothetical disputes in which the specifics of the challenged policies, the relevant factual context, and even the identi[t]y of the injured plaintiff are a matter of conjecture . . . in light of the important constitutional issues at stake and the national defense interests that might be implicated").

Nor may plaintiff circumvent the requirement that he show an imminent threat of future injury by characterizing his claim for declaratory relief as seeking to adjudicate whether federal employees violated his rights in the past.  To be justiciable, a declaratory judgment claim must seek "an adjudication of *present* right upon established facts."  *Ashcroft*, 431 U.S. at 172 (emphasis added) (internal quotation marks omitted).  Judicial announcements of past rights violations are simply advisory opinions, for the requisite "case or controversy" does not exist unless the claim "settl[es] some dispute *which affects the behavior of the defendant towards the plaintiff*," *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original).  For instance, in *Haase v. Sessions*, 835 F.2d at 904-05, the plaintiff sought a declaration that federal officials had violated his constitutional rights and that those violations were a result of government policy.

7

Applying *Lyons*'s requirement that the plaintiff show an imminent risk of future injury, the D.C.

Circuit ruled that plaintiffs seeking a declaration that an alleged policy is unconstitutional "must

not only demonstrate its existence but also that they are likely to be subjected to the policy

again." *Id.* at 911. Such a showing, the Court explained, further required that plaintiffs allege

"immediate and concrete plans" to subject themselves to the policy again. *See id.* In this case,

plaintiff has not alleged that any detention-related policies or practices will be applied to him

again, much less that he has "immediate and concrete plans" to travel to Iraq such that they could

conceivably be applied to him.

Plaintiff's claim for declaratory judgment, in fact, is indistinguishable for all relevant

purposes from the declaratory judgment claim recently dismissed for lack of standing in *In re*

*Iraq & Afghanistan Detainees Litig.*, 479 F. Supp. 2d 85, 118 (D.D.C. 2007), *appeal docketed*

*sub nom. Ali v. Rumsfeld*, No. 07-5178 (D.C. Cir. May 31, 2007). In that case, as here, detainees

who had been held by military personnel abroad sought a declaration that conduct by federal

officials deprived them of their rights under the United States Constitution, the law of nations,

and provisions of the Geneva Conventions. *See id.* at 117. Observing that the plaintiff detainees

had been released from detention and that Congress had prohibited mistreatment of detainees in

the Detainee Treatment Act of 2005, Pub. L. 109-148, §§ 1001-06, 119 Stat. 2680, 2739-44, this

Court held that plaintiffs lacked standing under *Lyons* because they had failed to establish that

they faced a real and imminent threat of being wronged again. *Id.* at 118.[4] As this Court

---

[4]    This Court also relied on the fact that the individual defendants had since left the
positions they held when the alleged injuries occurred. *Id.* For this reason, plaintiff's declaratory
judgment claim is especially inappropriate insofar as it seeks relief from the individual
defendants, none of whom now holds the position he held at the time of plaintiff's detention. *See*
Compl. ¶¶ 14, 16-17; Mem. in Supp. of Indiv. Defs.' Mot. To Dism. at 41-42.

observed, "[a] declaratory judgment therefore would have no practical enforcement effect or serve as anything other than an opinion advising the plaintiffs what the law would be *if* they were re-arrested, *if* the military officials detaining them interrogated them again, and *if* the military officials violated federal law in doing so." *Id.* (emphasis in original). Like the detainees in *In re Iraq*, plaintiff in this case has already been released and has made no allegations that he would be re-arrested. Indeed, plaintiff's ability to allege an imminent threat of future harm is even more tenuous than the detainees in *In re Iraq*, who, as Iraqi and Afghan citizens, were still within the borders of those nations. *Id.* at 89-90.

Thus, because the complaint is devoid of allegations that could establish the threat of future injury necessary for declaratory relief, this Court should dismiss plaintiff's declaratory judgment claim for lack of standing under Federal Rule of Civil Procedure 12(b)(1).

## II.    THIS COURT SHOULD DISMISS PLAINTIFF'S DECLARATORY JUDGMENT CLAIM BECAUSE PLAINTIFF HAS FAILED TO SATISFY THE PRECONDITIONS FOR EQUITABLE RELIEF.

Before a court may enter a declaratory judgment, it must assure itself that the requested declaration meets the traditional prerequisites for equitable relief. *See Lyons*, 461 U.S. at 111-12.[5] Equitable relief "is unavailable absent a showing of *irreparable injury*, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Id.* at 111 (emphasis added). Even if a plaintiff has been injured in the past, he

---

[5]    Plaintiff has couched his claim as one for declaratory relief, but as the D.C. Circuit has explained, "the discretionary relief of declaratory judgment is, in a context such as this where federal officers are defendants, the practical equivalent of specific relief such as injunction or mandamus, since it must be presumed that federal officers will adhere to the law as declared by the court." *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985). The criteria for issuance of a declaratory judgment are therefore equivalent to the criteria for issuance of injunctive relief in this context. *See id.*

must still demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *Id.* These preconditions for equitable relief take on special significance when, as in this case, the declaratory relief sought would interfere with the activities of the Executive Branch. *See Rizzo*, 423 U.S. at 378-79 ("When a plaintiff seeks to enjoin the activity of a government agency . . . his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs.") (internal quotation marks omitted); *cf. Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1043 (9th Cir. 1999) (en banc) (declining to declare roving patrols by Border Patrol unconstitutional in light of "relevant and significant" separation of powers concerns and failure of plaintiffs to allege they would again be subject to patrols).[6]  Plaintiff has alleged no imminent threat that the policies he challenges will again be applied to him.  Instead, based only on his past injury, the plaintiff seeks a declaration designed to require the United States military to change its detention policies in a war zone abroad.  *See* Compl. ¶¶ 3, 10.  Thus, like the plaintiffs in *Lyons*, *Rizzo*, and *Hodgers-Durgin*, plaintiff in this case cannot invoke this Court's equitable powers to enter a declaratory judgment.

## III.    THIS COURT SHOULD DISMISS PLAINTIFF'S DECLARATORY JUDGMENT CLAIM AS BEYOND THIS COURT'S DISCRETION.

Even if this Court were to determine that it could adjudicate plaintiff's declaratory judgment claim, it should decline to do so.  "The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' not that it *must* do so."

---

[6]    The court in *Hodgers-Durgin* assessed the propriety of declaratory relief under the doctrine of ripeness, but the ripeness doctrine and the requirement of imminent harm function identically in this context.  *See* 199 F.3d at 1044 ("In suits seeking both declaratory and injunctive relief against a defendant's continuing practices, the ripeness requirement serves the same function in limiting declaratory relief as the imminent-harm requirement serves in limiting injunctive relief.").

*MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 776 (2007) (quoting 28 U.S.C. § 2201(a)) (emphasis in *MedImmune*). Accordingly, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *see also Hewitt*, 482 U.S. at 762 ("The fact that a court *can* enter a declaratory judgment does not mean that it *should.*") (emphasis in original). This Court should refuse to entertain plaintiff's claim for two interconnected reasons.

First, the declaratory relief sought by plaintiff would involve the courts in deciding sensitive issues of military and foreign policy. In *Sanchez-Espinoza v. Reagan*, 770 F.2d at 206, 208, the court refused to issue a declaration that federal officials had violated the Constitution and international law by providing military support in conjunction with a foreign conflict. The court observed that such a declaration would require judicial interjection into a sensitive foreign affairs matter committed to the political branches and that the military operations it had been asked to terminate had received attention and approval from high-level executive officials. *Id.* at 208. In such circumstances, the court concluded, a grant of declaratory relief would be an abuse of discretion. *Id.* Plaintiff's requested declaration seeks judicial interjection into no less sensitive a matter of foreign and military affairs—the military's handling of detainees in an area in which hostilities are ongoing. Such an intervention would not only entangle courts in core aspects of military affairs constitutionally assigned to the political branches, *see Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality), it would also entangle courts in the conduct of military operations abroad despite the traditional reservation of foreign relations to the political branches, *see United States v. Verdugo-Urquidez*, 494 U.S. 259, 273 (1990). *See generally Bancoult v. McNamara*, 445 F.3d 427, 433 (D.C. Cir. 2006), *cert. denied*, 127 S. Ct. 1125 (2007)

11

(acknowledging that "the use and disposition of military power" are "plainly the exclusive province of Congress and the Executive") (internal quotation marks omitted); *In re Iraq*, 479 F. Supp. 2d at 107 ("It is established beyond peradventure that military affairs, foreign relations, and national security are constitutionally committed to the political branches of our government.").[7]

Second, the intrusion contemplated by plaintiff's claim is overly broad and poorly defined. Especially where "matters of public law" are involved, "courts should be careful to avoid 'futile or premature interventions' that would reach far beyond the particular case." *Lampkin v. Connor*, 360 F.2d 505, 509 (D.C. Cir. 1966) (quoting *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244-45 (1952)). Here, plaintiff demands a broad-ranging declaration that would reach far beyond his particular case. He does not seek a declaration limited to his situation or even to a narrow class of United States citizen detainees. *See* Compl. ¶¶ 59-64, prayer for relief (a). Rather, he challenges the application of alleged detention policies to any person, regardless of that person's citizenship or alienage; that person's role in the ongoing hostilities; the circumstances surrounding the decision to detain; the grounds for detention; the security or insecurity of the area in which the person is detained; or any of the host of other factors that might influence the latitude allowed the United States military in handling a person detained on the field of battle during wartime. *See id.* Especially in the context of military operations abroad, this Court should reject this attempt to determine the rights of an uncertain class of unnamed persons whose situations likely vary widely from plaintiff's. *Cf. Getty Images*,

---

[7]    For further discussion of the commitment of military and foreign affairs to the political branches, see the Memorandum in Support of the Individual Defendants' Motion to Dismiss at 11-17.

193 F. Supp. 2d at 118.

Thus, because the declaration sought by plaintiff would be inconsistent with well-established limits on federal courts' discretion to issue declaratory judgments, this Court should dismiss his claim under Rule 12(b)(1).

## IV.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT UNDER THE LAW OF NATIONS AND THE GENEVA CONVENTIONS FOR LACK OF JURISDICTION.

Plaintiff's declaratory judgment claim is also not cognizable insofar as it seeks a declaration that any acts, practices or policies violate the law of nations or the Geneva Conventions. The Declaratory Judgment Act, 28 U.S.C. § 2201, is not an independent source of federal jurisdiction. *C&E Servs., Inc. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002). "Rather, 'the availability of [declaratory] relief presupposes the existence of a judicially remediable right.'" *Id.* (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)) (alteration in *C&E Servs.*). Therefore, a plaintiff seeking declaratory relief must identify some independent source of federal subject matter jurisdiction. *See id.*; *Gallucci v. Chao*, 374 F. Supp. 2d 121, 128-29 (D.D.C. 2005), *aff'd*, No. 05-5280, 2006 WL 3018055 (D.C. Cir. Mar. 2, 2006), *cert. denied*, 127 S. Ct. 1358 (2007). In addition, the plaintiff must also identify a source of law creating the claim itself, for the Declaratory Judgment Act does not create a cause of action. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950); *United States v. Instruments, S.A., Inc.*, 807 F. Supp. 811, 814 (D.D.C. 1992). No source of law creates a justiciable private right of action for alleged violations of the law of nations or the Geneva Conventions.

A claim premised on the law of nations is not subject to federal jurisdiction in the absence of a domestic statute. *See Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1174 n.1 (D.C. Cir. 1994) ("[A] federal court is not competent to hear a claim arising under international

13

law absent a statute granting such jurisdiction."). Plaintiff has identified no domestic statue that would provide federal subject matter jurisdiction. He cites the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, *see* Compl. ¶ 10, but as noted above, that Act is not an independent source of federal subject matter jurisdiction. He also cites 28 U.S.C. § 1331, the federal question statute, *see* Compl. ¶ 10, but that statute does not grant subject matter jurisdiction over claims based on the law of nations. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 731 n.19 (2004) (finding "no reason to believe" that Congress intended federal-question jurisdiction to encompass common-law claims derived from the law of nations); *Handel v. Artukovic*, 601 F. Supp. 1421, 1426-28 (C.D. Cal. 1985) (dismissing claim based on international law for lack of jurisdiction). Thus, this Court lacks subject matter jurisdiction over plaintiff's claim for a declaratory judgment insofar as it attempts to invoke the law of nations.

This Court also lacks jurisdiction over plaintiff's claim for declaratory judgment insofar as it invokes the Geneva Conventions. In the absence of legislation creating a private right of action, an individual can invoke treaty provisions in the federal courts only when the treaty expressly or impliedly provides a private right of action. *See Comm. of U.S. Citizens Living in Nicar. v. Reagan*, 859 F.2d 929, 937-38 (D.C. Cir. 1988); *In re Iraq*, 479 F. Supp. 2d at 115 ("'Absent authorizing legislation, an individual has access to courts for enforcement of a treaty's provisions only when the treaty is self-executing, that is, when it expressly or impliedly provides a right of action.'") (quoting *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 808 (D.C. Cir. 1984) (Bork, J., concurring)). The Geneva Conventions provide no such private right of action, and federal courts accordingly lack jurisdiction over claims invoking them. *See Tel-Oren*, 726 F.2d at 808-810 (Bork, J., concurring) (no jurisdiction under § 1331); *Huynh Thi Anh v. Levi*, 586 F.2d 625, 629-30 (6th Cir. 1978) (same); *Handel*, 601 F. Supp. at 1424-26 (same); *cf. Hamdan v.*

14

*Rumsfeld*, 415 F.3d 33, 38-40 (D.C. Cir. 2005) (holding that, although habeas statute provided

jurisdiction over petition, petitioner could not invoke Geneva Conventions because they were not

judicially enforceable), *rev'd on other grounds*, 126 S. Ct. 2749 (2006); *In re Iraq*, 479 F. Supp.

2d at 115-117 (holding that lack of private right of action under Geneva Conventions required

dismissal for failure to state claim).[8]

Even if federal courts otherwise had jurisdiction over claims invoking the Geneva

Conventions, the Military Commissions Act of 2006 ("MCA"), Pub. L. 109-366, § 5, 120 Stat.

2600, 2631-32, would explicitly foreclose any such action:

> No person may invoke the Geneva Conventions or any protocols thereto in any
> habeas corpus or other civil action or proceeding to which the United States, or a
> current or former officer, employee, member of the Armed Forces, or other agent
> of the United States is a party as a source of rights in any court of the United
> States or its States or territories.

Here, plaintiff specifically "invoke[s]" the Geneva Conventions in support of his declaratory

judgment claim and seeks to do so in a civil proceeding against the United States and its current

and former officers and agents. *Compare id.* § 5(b); *with* Compl. ¶ 11, prayer for relief (a).

Therefore, the MCA precludes his claim.

---

[8]    The Supreme Court's discussion of the Geneva Conventions in *Hamdan* is not to the contrary. The Court in *Hamdan* "assume[d] that 'the obvious scheme' of the [Geneva Conventions] . . . would, absent some other provision of law, preclude [petitioner's] invocation of the Convention's provisions as an independent source of law binding the Government's actions and furnishing petitioner with any enforceable right." 126 S. Ct. at 2794 (quoting *Johnson v. Eisentrager*, 339 U.S. 763, 789 n.14 (1950)). Operating under this assumption, the Court reasoned that the Geneva Conventions were still relevant to the availability of habeas relief because the congressional authorization for the military commissions at issue in *Hamdan* expressly required compliance with the "law of war," of which the Geneva Conventions were a part. *Id.* No federal statute creates a vehicle for invoking the Geneva Conventions in an action for declaratory judgment; indeed, in the Military Commissions Act, *see infra*, Congress has done just the opposite.

## CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiff's declaratory judgment

claim against the United States under Federal Rule of Civil Procedure 12(b)(1) and (6).

Dated:  September 17, 2007

                              Respectfully submitted,

                              PETER D. KEISLER
                              Assistant Attorney General

                              TIMOTHY P. GARREN
                              Director, Torts Branch

                              MARY HAMPTON MASON (DC Bar # 4274671)
                              Senior Trial Attorney, Torts Branch


                              */s/ Zachary C. Richter*
                              ZACHARY C. RICHTER (Texas Bar # 24041773)
                              Trial Attorney, Torts Branch
                              UNITED STATES DEPARTMENT OF JUSTICE
                              CIVIL DIVISION
                              P.O. Box 7146, Ben Franklin Station
                              Washington, D.C. 20044
                              (202)616-4199 (phone)
                              (202)616-4314 (fax)
                              Zachary.Richter@usdoj.gov

                              PAUL E. WERNER
                              Law Student Intern, Torts Branch

                              ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing document on counsel for plaintiff through this Court's Electronic Case Filing system pursuant to LCvR 5.4(d)(1).

Dated: September 17, 2007

_____*/s/ Zachary C. Richter*_____
ZACHARY C. RICHTER
Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|
CYRUS KAR,                                                          |
                                                                   |
                Plaintiff,                                          |
                                                                   |
v.                                                                 |    No. 07-cv-00984-JR
                                                                   |
DONALD RUMSFELD, et al.,                                           |
                                                                   |
                Defendants.                                        |
                                                                   |
---

### **ORDER**

UPON CONSIDERATION of the United States' Motion To Dismiss, and the grounds stated therefor, it is on this _____ day of _____, 20___, hereby

ORDERED that said motion should be and hereby is granted; and it is

FURTHER ORDERED that plaintiff's claim against Secretary of Defense Robert Gates in his official capacity is DISMISSED WITH PREJUDICE.


_____
UNITED STATES DISTRICT JUDGE


Zachary C. Richter                          Arthur B. Spitzer
United States Department of Justice         American Civil Liberties Union
Civil Division                              1400 20th St. NW
P.O. Box 7146, Ben Franklin Station         Suite 119
Washington, D.C. 20044                      Washington, D.C. 20036