IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————

CYRUS KAR,

       Plaintiff,

v.

DONALD RUMSFELD, et al.,

       Defendants.

———————————————————

No. 07-cv-00984-JR


**REPLY MEMORANDUM IN SUPPORT OF**
**INDIVIDUAL DEFENDANTS' MOTION TO DISMISS**


JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

C. FREDERICK BECKNER III
Deputy Assistant Attorney General

TIMOTHY P. GARREN
Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Attorney, Torts Branch

ZACHARY C. RICHTER
Trial Attorney, Torts Branch

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION

# TABLE OF CONTENTS

I.   PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF ALLEGING
     SPECIFIC FACTS THAT WOULD SUPPORT PERSONAL JURISDICTION
     OVER GENERAL BRANDENBURG. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR DAMAGES
     UNDER THE CONSTITUTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.   Special factors counsel against creating an individual-capacity damages
          action based on the actions of military personnel in a foreign war zone. . . . . . . . 6

     B.   Qualified immunity bars plaintiff's claims for damages under the
          Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          1.   Qualified immunity bars plaintiff's claims for damages under the
               Constitution because he has not adequately alleged personal
               involvement by the individual defendants. . . . . . . . . . . . . . . . . . . . . . . . 14

          2.   Qualified immunity bars plaintiff's claim for damages under the
               Fourth Amendment because he has not alleged a violation of any
               clearly established Fourth Amendment right. . . . . . . . . . . . . . . . . . . . . . 16

          3.   Qualified immunity bars plaintiff's claim for damages under the
               Fifth Amendment because he has not alleged a violation of any
               clearly established Fifth Amendment right. . . . . . . . . . . . . . . . . . . . . . . 19

III. THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR DAMAGES
     UNDER THE GENEVA CONVENTIONS AND THE LAW OF NATIONS. . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## Cases

*Ali v. District of Columbia*, 278 F.3d 1 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Anderson v. Creighton*, 483 U.S. 635 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34 (D.D.C.). . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Bancoult v. McNamara*, 370 F. Supp. 2d 1 (D.D.C. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bell Atl. Corp. v Twombly*, 127 S. Ct. 1955 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . 16, 18

*Butz v. Economou*, 438 U.S. 478 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886 (1961). . . . . . . . . . . . . . . . . 20

*Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

\* *Chappell v. Wallace*, 462 U.S. 296 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Davis v. Scherer*, 468 U.S. 183 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Elmagraby v. Ashcroft*, No. 04-1809, 2005 WL 2375202 (E.D.N.Y. Sept. 27, 2005). . . . . . . . . 16

*Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ex parte Quirin*, 317 U.S. 1 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*FC Inv. Group LC v. IFX Markets, Ltd.*, 479 F. Supp. 2d 30 (D.D.C. 2007). . . . . . . . . . . . . . . . 5

*Foucha v. Louisiana*, 504 U.S. 71 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gerstein v. Pugh*, 420 U.S. 103 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000). . . . . . . . . . . 5

\*    *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Harbury v. Hayden*, 444 F. Supp. 2d 19 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

*Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264 (D.C. 2001). . . . . . . . . . . . . . . . . . . . . . 5

*Ibrahim v. District of Columbia*, 357 F. Supp. 2d 187 (D.D.C. 2004). . . . . . . . . . . . . . . . . . . . 4

\*    *In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d 85 (D.D.C. 2007). . . . . . . . . . . . . . . . . *passim*

*Int'l Action Ctr. v. United States*, 365 F.3d 20 (D.C. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . 14, 15

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34 (D.D.C. 2005). . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 5

*Johnson v. Eisentrager*, 339 U.S. 763 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kopff v. Battaglia*, 425 F. Supp. 2d 76 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Little v. Barreme*, 6 U.S. (2 Cranch) 170 (1804). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mathews v. Eldridge*, 424 U.S. 319 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Mitchell v. Forsyth*, 472 U.S. 511 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Moundridge, KS v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20 (D.D.C. 2007). . . . . . . . . . . . . . . . . 2

*Moyer v. Peabody*, 212 U.S. 78 (1909). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Munsell v. Dep't of Agric.*, 509 F.3d 572 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Padilla v. Hanft*, 423 F.3d 386 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*The Paquete Habana*, 175 U.S. 677 (1900). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Parham v. J.R.*, 442 U.S. 584 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pitt v. District of Columbia*, 491 F.3d 494 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Princz v. Federal Republic of Germany*, 26 F.3d 1166 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . 23

iii

*Rasul v. Bush*, 542 U.S. 446 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

\*     *Rasul v. Myers*, No. 06-5209, 2008 WL 108731 (D.C. Cir. Jan. 11, 2008). . . . . . . . . . . . . . . 8, 24

*Rasul v. Rumsfeld*, 414 F. Supp. 2d 26 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 24

*Reid v. Covert*, 354 U.S. 1 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

\*     *Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Saucier v. Katz*, 533 U.S. 199 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Schneider v. Kissinger*, 310 F. Supp. 2d 251, 267 (D.D.C. 2004). . . . . . . . . . . . . . . . . . . . . . 24, 25

*Simpkins v. D.C. Gov't*, 108 F.3d 366 (D.C. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Salerno*, 481 U.S. 739 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

\*     *United States v. Stanley*, 483 U.S. 669 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

*Whitney v. Robertson*, 124 U.S. 190 (1888). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

\*     *Wilkie v. Robbins*, 127 S. Ct. 2588 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10, 13

*Wilson v. Libby*, 498 F. Supp. 2d 74 (D.D.C. 2007). . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 24

*Wolff v. McDonnell*, 418 U.S. 539 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zadvydas v. Davis*, 533 U.S. 678 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zakiya v. United States*, 267 F. Supp. 2d 47 (D.D.C. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Constitution**

U.S. Const. art. I, § 9, cl. 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Statutes**

28 U.S.C. § 2241. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

28 U.S.C. § 2679. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 25

Detainee Treatment Act, Pub. L. No. 109-163, 119 Stat. 3136 (2006). . . . . . . . . . . . . . . . . . . . . 14

Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600. . . . . . . . . . . . . . . . . 23

D.C. Code § 13-423(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

**Rules**

Fed. R. Civ. P. 12(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## REPLY MEMORANDUM IN SUPPORT OF
## INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

In this civil action, plaintiff originally brought claims based on his detention in wartime Iraq against the United States and several individual federal employees.  As is apparent from plaintiff's repeated characterization of the individual defendants' arguments as "the government's," *see, e.g.*, Pl.'s Opp'n (Doc. No. 18) at 1, 9, 31, 32, 34, 35 n.10, plaintiff still views his suit as an attack on the actions of the federal government generally.  But while the United States' interests must be taken into account in deciding this matter, "the government" is no longer a party to this case.  Plaintiff does not oppose dismissal of his claim for declaratory judgment against the United States or the individual defendants, *see* Pl.'s Resp. (Doc. No. 17) at 1, and he presents no viable damages claims against the United States.  The only claims currently at issue are damages claims against two senior military commanders—General George Casey and General William Brandenburg—in their respective individual capacities.[1]  Therefore, the central question raised by plaintiff's remaining claims is whether this Court should allow plaintiff to seek damages from the *personal* resources of two *individual* employees based on their conduct of military operations abroad.

This Court should dismiss these individual-capacity damages claims.  To pursue individual-capacity claims against General Brandenburg, plaintiff must allege specific facts that would support an exercise of jurisdiction over him as an individual, and plaintiff has failed to do

---

[1]    Plaintiff does not dispute that former Secretary of Defense Donald Rumsfeld was a defendant on the declaratory judgment claim only.  *See* Compl., prayer for relief (a), (b); Ind. Defs.' Mem. at 3 n.3, 21 n.12.  Because plaintiff does not oppose dismissal of his declaratory judgment claims, both Secretary Rumsfeld and Secretary Gates (who has been sued in his official capacity only) should be dismissed as defendants.

Plaintiff has also failed to respond in any fashion to the defendants' objections to their Notice of Related Case (Document No. 4), which has been on file since August 1, 2007.  Accordingly, this Court should find that this case is not related to plaintiff's habeas petition and return this case to the Clerk for random reassignment.

1

so. Plaintiff's constitutional damages claims fail for two reasons: first, because special factors counsel against creating an individual-capacity damages action; and second, because qualified immunity protects individual employees when, as in this case, a plaintiff has failed to assert a violation of any clearly established constitutional rule. Finally, plaintiff's claims under international law fail because plaintiff lacks a private right of action and because the individual defendants are absolutely immune. Accordingly, this Court should dismiss plaintiff's suit in its entirety and with prejudice.

## I.   PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF ALLEGING SPECIFIC FACTS THAT WOULD SUPPORT PERSONAL JURISDICTION OVER GENERAL BRANDENBURG.

Plaintiff's argument for personal jurisdiction over General Brandenburg, a non-resident, hinges exclusively on unalleged and unspecified "contacts with high ranking officials within the District of Columbia" that plaintiff suggests this Court "infer" from General Brandenburg's military position. Pl.'s Opp'n at 39. This proposed inference is both unwarranted and insufficient to carry plaintiff's burden of alleging a factual basis for personal jurisdiction.

"Plaintiffs rightfully carry a heavier burden in answering a jurisdictional challenge under Rule 12(b)(2) than [in] a Rule 12(b)(6) challenge to the sufficiency of [a] plead claim." *Moundridge, KS v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 36 n.6 (D.D.C. 2007). To survive a Rule 12(b)(2) challenge, "a plaintiff must prove with a fuller and determinative factual presentation that a court has authority over a challenging party if that party is to be subject to the burdens of defending further litigation." *Id.* Therefore, a plaintiff "must allege *specific facts* on which personal jurisdiction is based." *Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 56 (D.D.C. 2005) (emphasis added), *aff'd on other grounds*, *Islamic Am. Relief*

*Agency v. Gonzales*, 477 F.3d 728 (D.C. Cir. 2007), *cert. denied*, 128 S. Ct. 92 (2007).[2]

Plaintiff has alleged no specific facts that would establish personal jurisdiction under the transacting business prong of the District's long-arm statute, D.C. Code § 13-423(a)(1), or the Due Process Clause. Plaintiff is unable to cite a single portion of his complaint alleging that General Brandenburg participated in any transaction within the District of Columbia; that General Brandenburg directed any conduct at the District of Columbia; or even that the "policies and practices" General Brandenburg purportedly executed were crafted or even considered in the District of Columbia.

Instead, plaintiff suggests that this Court assume, based solely on General Brandenburg's alleged supervisory responsibilities for operations *outside* the District, that he interacted (from some location unspecified by plaintiff) with District-based officials in the "development and shaping" of policies designed to be applied *outside* the District. *See* Pl.'s Opp'n at 39-40 (citing Compl. ¶ 17).[3] If such an assumption were warranted, then personal jurisdiction would always lie in the District for any federal official alleged to have "executed" a federal policy anywhere in the world, for courts would be obligated to assume that the alleged execution of the policy must have resulted from contacts with District-based officials. Yet courts in this Circuit, when confronted with allegations that an individual defendant has executed a policy or practice—even

_____

[2]    Plaintiff's repeated observation that General Brandenburg has not denied contacts with the District, *see* Pl.'s Opp'n at 40 n.18, 41, misses the point of General Brandenburg's motion, which focuses on the inadequacy of plaintiff's complaint. Because plaintiff has failed to carry his burden of alleging specific facts upon which personal jurisdiction may be based, going beyond the pleadings is neither necessary nor justified. *See Kopff v. Battaglia*, 425 F. Supp. 2d 76, 80-81, 83-84 & n.8 (D.D.C. 2006).

[3]    Plaintiff does not explain why, were this Court to infer contacts based on General Brandenburg's position, such contacts would be with the District of Columbia rather than with the Eastern District of Virginia, where the defendants' agency headquarters, the Pentagon, is located.

a policy or practice purportedly crafted in the District by senior-level officials—have consistently

refused to exercise personal jurisdiction. *See, e.g., Islamic Am.*, 394 F. Supp. 2d at 40 (finding

no personal jurisdiction over an IRS field agent based on his alleged enforcement of policies and

practices promulgated in the District by senior-level officials); *Zakiya v. United States*, 267 F.

Supp. 2d 47, 53-54 (D.D.C. 2003) (holding that the enforcement of a regulation promulgated in

the District does not suffice to confer personal jurisdiction under the transacting business prong).[4]

This consistent refusal is in line with the D.C. Circuit's warning that "[c]ourts in this circuit must

examine challenges to personal jurisdiction and venue carefully" to guard against the risk that

"[b]y naming high government officials as defendants, a plaintiff could bring a suit here that

properly should be pursued elsewhere," *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir.

1993).

Even the contacts plaintiff urges this Court to infer would be insufficient to carry

plaintiff's burden of establishing personal jurisdiction under section 13-423(a)(1) or the Due

Process Clause.  Not every contact with a jurisdiction suffices; rather, the contacts must amount

to "purposeful activity by the defendant in the District of Columbia by which [the defendant]

invoked the benefits and protections of the District's laws."  *Atlantigas Corp. v. Nisource, Inc.*,

290 F. Supp. 2d 34, 44 (D.D.C.), *appeal dismissed*, No. 03-7166, 2003 WL 2291974 (D.C. Cir.

---

[4]    Courts in this Circuit have even indicated that a government employee's contacts with the District for purposes of his employment are insufficient to establish personal jurisdiction over individual-capacity claims, noting that "it is well-settled that [a federal district court in D.C.] cannot assert jurisdiction over an individual defendant based on his actions taken pursuant to his employment." *Islamic Am.*, 394 F. Supp. 2d at 58; *see also Ali v. District of Columbia*, 278 F.3d 1, 7 (D.C. Cir. 2002) (refusing to exercise personal jurisdiction over Virginia officials whose only contacts with the District were in their official capacities); *Ibrahim v. District of Columbia*, 357 F. Supp. 2d 187, 193 (D.D.C. 2004) (finding no personal jurisdiction over individual defendant where "all of the acts alleged by [the plaintiff] to connect the [non-resident] defendants to this forum relate[d] to actions taken in their official capacities, and he fail[ed] to allege that any of these defendants transacted business in the District or caused tortious injury within the District in an individual capacity").

Dec. 11, 2003).  Thus, "to satisfy the due process requirements associated with [a D.C. court's] exercise of personal jurisdiction over a nonresident defendant under section 13-423(a)(1), the plaintiff must show that the defendant has purposefully engaged in some kind of commercial or business-related activity directed at District residents." *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270-71 (D.C. 2001).  The only nexus between General Brandenburg and the District even suggested by plaintiff is unspecified interactions regarding policies intended for application not in the District, but in Iraq, and purportedly causing injury not in the District, but in Iraq.  Such interactions are far from sufficient to establish the kind of purposeful activity directed at the District that the long-arm statute and due process require.  *Cf., e.g.*, *FC Inv. Group LC v. IFX Markets, Ltd.*, 479 F. Supp. 2d 30, 39-40 (D.D.C. 2007) (holding that regular phone calls into the District from elsewhere did not suffice to confer personal jurisdiction under transacting business prong).  Moreover, plaintiff alleges that he is not a District resident, *see* Compl. ¶ 13, so the interactions could not have been "directed at District residents," *see Holder*, 779 A.2d at 270-71.

Plaintiff's failure to allege specific facts or even to suggest a plausible basis for personal jurisdiction leaves his request for jurisdictional discovery without support.  "Jurisdictional discovery . . . is justified only if the plaintiff reasonably 'demonstrates that it can supplement its jurisdictional allegations through discovery.'" *Kopff*, 425 F. Supp. at 89-90 (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000)).  "Generalized predictions" that discovery could establish a defendant's contacts with a jurisdiction are insufficient to justify jurisdictional discovery.  *Atlantigas*, 290 F. Supp. 2d at 53; *see also Islamic Am.*, 394 F. Supp. 2d at 56 n.24.  Plaintiff offers only the generalized prediction that discovery "could" provide him with "information about the extent and character of General Brandenburg's direct contacts with officials in the District."  Pl.'s Opp'n at 41.  Moreover, for the reasons

5

discussed above, even the contacts plaintiff urges this Court to infer would be insufficient for personal jurisdiction. Therefore, this Court should dismiss plaintiff's claims against General Brandenburg for lack of personal jurisdiction without permitting discovery.

## II.     THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR DAMAGES UNDER THE CONSTITUTION.

### A.     Special factors counsel against creating an individual-capacity damages action based on the actions of military personnel in a foreign war zone.

Plaintiff's discussion of the special factors doctrine proceeds from a misunderstanding of that doctrine and the case law establishing it. The question is not, as plaintiff assumes, whether a court can *ever* inquire into constitutional questions arising from military decisionmaking abroad. *See* Pl.'s Opp'n at 8-9. Rather, the question is whether authorizing a type of lawsuit—a judicially-created damages action targeting individual government employees' personal resources—represents "the best way to implement a constitutional guarantee." *Wilkie v. Robbins*, 127 S. Ct. 2588, 2597 (2007). That the Supreme Court has "in most instances . . . found a *Bivens* remedy unjustified," *id.* at 2597-98, and has "consistently refused to extend *Bivens* liability to any new context or new category of defendants," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001), makes clear that a judicially-created damages action is most often not an appropriate step.[5]

Plaintiff's misunderstanding of the question at issue leads him to mischaracterize *Hamdi*

_____

[5]     *Munsell v. Department of Agriculture*, 509 F.3d 572 (D.C. Cir. 2007), does not depart from this general reluctance to create *Bivens*-type actions in new contexts. The panel in *Munsell* declined to decide whether the new damages action proposed in that case was appropriate and instead dismissed the plaintiff's claim on exhaustion grounds. *See id.* at 591 ("We need not now decide whether to extend the *Bivens* remedy to the current case."). The panel recognized that the argument against creating a damages action, which hinged on whether such an action would interfere with federal meat inspection functions statutorily assigned to a particular agency, was "not without force." *Id.* at 590. When, as in this case, the proposed damages action would interfere with matters *constitutionally* assigned to the political branches, the argument against creating a damages action is even more forceful.

*v. Rumsfeld*, 542 U.S. 507 (2004) (plurality opinion), and *Rasul v. Bush*, 542 U.S. 466 (2004), as addressing "precisely" the issue before this Court.  Pl.'s Opp'n at 9.  As plaintiff concedes, Pl.'s Opp'n at 9, *Hamdi* and *Rasul* involved petitions for habeas corpus under 28 U.S.C. § 2241, not individual-capacity damages actions, *see Hamdi*, 542 U.S. at 511; *Rasul v. Bush*, 542 U.S. at 473. The availability of existing mechanisms to raise claims of constitutional violations does not suggest that an individual-capacity damages remedy should also be available.  *See United States v. Stanley*, 483 U.S. 669, 683 (1987) (explaining that the availability of "redress designed to halt or prevent [a] constitutional violation" did not mean that the court should infer a new damages action); *cf. Corr. Servs. Corp.*, 534 U.S. at 74 (declining to infer damages remedy against entity despite availability of traditional injunctive relief to address alleged violations).  Moreover, the availability of habeas relief is an issue very different from the availability of an individual-capacity damages action.  First, unlike an individual-capacity damages claim, which may be inferred by the judiciary only in limited situations, *see Wilkie*, 127 S. Ct. at 2597, the writ of habeas corpus has been explicitly recognized in the text of the Constitution, *see* U.S. Const. art. I, § 9, cl. 2, and channeled by Congress in a federal statute, 28 U.S.C. § 2241.  *See Rasul v. Bush*, 542 U.S. at 473-74; *see also Stanley*, 483 U.S. at 683.  Second, the availability of individual-capacity damages suits is likely to affect ongoing government operations far more pervasively and severely than the availability of habeas relief could, for whereas habeas relief may result in an order directing the release of a particular detainee, the threat of an individual-capacity damages suit chills federal employees across the board from vigorously pursuing their responsibilities by exposing them to personal liability.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (recognizing "the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible public officials, in the unflinching discharge of their duties") (internal quotation marks, brackets, and citation omitted); *cf. Johnson v. Eisentrager*,

339 U.S. 763, 779 (1950) ("It would be difficult to devise more effective fettering of a field commander than to allow the very enemies he is ordered to reduce to submission to call him to account in his own civil courts and divert his efforts and attention from the military offensive abroad to the legal defensive at home."). Therefore, the availability of habeas relief in *Hamdi* and *Rasul v. Bush* is wholly unrelated to the question of whether an individual-capacity damages action is available in this case.

Nor did *Hamdi* and *Rasul v. Bush* conclusively "dismiss[]," Pl.'s Opp'n at 12, any of the interests that counsel against inferring an individual-capacity damages action based on the treatment of detainees abroad. *Rasul v. Bush* did not make a constitutional holding, but "instead based its holding on 28 U.S.C. § 2241 only." *Rasul v. Myers*, No. 06-5209, 2008 WL 108731, *14 (D.C. Cir. Jan. 11, 2008). The *Hamdi* plurality described the governmental interests asserted in that case as "weighty and sensitive." 542 U.S. at 531. Plaintiff suggests that the *Hamdi* plurality "dismissed the assertion, made again here, that the exigencies of war prohibited litigation of the underlying constitutional claims." Pl.'s Opp'n at 10. But the ellipsis in plaintiff's selective quotation, Pl.'s Opp'n at 10-11, obscures the plurality's reasoning. The *Hamdi* plurality was discussing an enemy-combatant hearing where factual disputes would be "limited to the alleged *combatant's* acts," *Hamdi*, 542 U.S. at 534-35 (emphasis added). The factual disputes in individual-capacity damages actions are not "limited to the alleged combatant's acts," but require at a minimum an inquiry into the personal involvement of each individual defendant, *see infra* Part II.B.1. Therefore, the "factfinding imposition" engendered by an individual-capacity damages suit would be intrusive in a way the the sort of inquiry considered in *Hamdi* was not. Even if the Court in *Hamdi* or *Rasul v. Bush* had "dismissed" the relevant governmental interests, neither case concerned detention in a foreign war zone, where the exigencies of warfare are at their most pressing and government resources at their most

8

strained; the petitioner in *Hamdi* was detained in the United States, 542 U.S. at 510-11, and the petitioners in *Rasul v. Bush* were detained at Guantanamo Bay, Cuba, *see* 542 U.S. at 470. Thus, plaintiff's reliance on *Hamdi* and *Rasul v. Bush* is misplaced.[6]

Not only is plaintiff's understanding of the special factors doctrine misguided, but he also fails to recognize the magnitude of the constitutional and practical considerations that militate against creating an individual-capacity damages action in this context. Plaintiff disputes whether his particular lawsuit would implicate separation-of-powers concerns or create practical difficulties. *See, e.g.*, Pl.'s Opp'n at 12 (asserting that "Mr. Kar's claims do not hinge on the discovery of classified or otherwise protected national security information"); *id.* at 14 (observing that plaintiff and particular defendants against whom damages are currently sought are within United States); *id.* at 18 (discussing "harms that would flow from this Court's determination of Mr. Kar's claims" and asserting that "Mr. Kar's lawsuit . . . does not interfere with military operations"). Whatever the ultimate validity of these representations, courts "have consistently avoided focusing on the specific facts of a given case when determining whether to recognize an implied damages remedy." *Wilson v. Libby*, 498 F. Supp. 2d 74, 95 (D.D.C. 2007) (collecting cases), *appeal docketed*, No. 07-5257 (D.C. Cir. July 27, 2007). Otherwise, every case would

---

    [6]    Aside from *Hamdi* and *Rasul v. Bush*, plaintiff relies on a number of other cases that also undertake no "special factors" analysis whatsoever. The two Nineteenth Century admiralty cases cited by plaintiff, *see* Pl.'s Opp'n at 13, involved the application of existing remedies, not the creation of new causes of action. *See The Paquete Habana*, 175 U.S. 677, 678 (1900) (libel in admiralty); *Little v. Barreme*, 6 U.S. (2 Cranch) 170, 175 (1804) (same); *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 267-68 (1990) (explaining that *Little* did not involve consideration of Fourth Amendment); *Butz v. Economou*, 438 U.S. 478, 489-91 (1978) (explaining that *Little* addressed protection *vel non* from existing tort remedies). *Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985), while at least a *Bivens*-type case, did not address special factors, but whether certain federal officials could claim absolute immunity. As the Supreme Court has explained, whether a particular type of immunity is available to a federal official is a question "analytically distinct" from whether special factors counsel against creating a damages action. *Stanley*, 483 U.S. at 684.

9

involve judicial inquiry into the particular concerns implicated by each particular set of allegations—an inquiry that itself could interfere in the military or foreign affairs matters committed to the political branches. *See Stanley*, 483 U.S. at 682-83. As framed by the Supreme Court, therefore, the question is whether the existence of a new *type* of damages action in this context would be both consistent with the Constitution's division of authority and workable for the courts. *See Wilkie*, 127 S. Ct. at 2600-05.[7]

The new form of liability proposed by plaintiff—a judicially-created damages action based on the handling of detainees in a foreign war zone—would be neither consistent with constitutional authority nor workable. Plaintiff, without citing case law or any other authority, asserts that such a damages action would not interfere with war-making functions constitutionally assigned to the political branches because his suit involves detention, investigation, and processing of detainees only after the initial battlefield arrest. *See* Pl.'s Opp'n at 18. But the post-arrest handling of battlefield detainees, no less than their initial capture, is a crucial aspect of any military operation abroad. *See Hamdi*, 542 U.S. at 518 ("The capture and detention of lawful combatants and the capture, detention, *and trial* of unlawful combatants, by 'universal agreement and practice,' are 'important incident[s] of war.'") (quoting *Ex parte Quirin*, 317 U.S. 1, 28, 30 (1942)) (emphasis added).[8] When individuals are detained on the

---

[7]    For instance, just as plaintiff in this case asserts that he posed no threat to security, *see* Pl.'s Opp'n at 20, the plaintiff detainees in *In re Iraq & Afghanistan Detainees Litigation*, 479 F. Supp. 2d 85, 88 & n.1 (D.D.C. 2007), *appeal docketed sub nom. Ali v. Rumsfeld*, No. 07-5178 (D.C. Cir. May 31, 2007), alleged (and the court assumed for purposes of its opinion) that they were "innocent civilians" who were not engaged in any hostilities. Consistent with the Supreme Court's explanation of the special factors doctrine, the court in *In re Iraq* asked whether a damages action should be created for *any* detainee, not whether a damages action should be created for innocent detainees but not guilty ones. *In re Iraq*, 479 F. Supp. 2d at 103-07.

[8]    In the same vein, plaintiff seeks to distinguish *In re Iraq*, 479 F. Supp. 2d 85 (D.D.C. 2007), as dealing only with the narrow issue of suits based on detainee abuse. *See* Pl.'s Opp'n

battlefield, military commanders must determine whether and how to continue to hold them, how to investigate and evaluate them, and which limited resources can be devoted to detention, investigation, and evaluation. *See Hamdi*, 542 U.S. at 531-32. And whether or not plaintiff's particular case would necessitate far-reaching discovery, implicate sensitive national security information, or require evidence available only in a war zone—and nothing, aside from plaintiff's unsupported assertions, suggests that it would not—a new damages action for treatment of detainees abroad most certainly would give rise to a class of future cases presenting those practical hurdles. *Cf. Wilson v. Libby*, 498 F. Supp. 2d at 95 (rejecting proposed *Bivens* remedy even though disclosures necessary for particular case would not implicate sensitive information).

Plaintiff next attempts to discount the ramifications of a new damages action for military affairs by asserting that neither *Chappell v. Wallace*, 462 U.S. 296 (1983), nor *United States v. Stanley*, 483 U.S. at 669, "conclude[d] that separation-of-powers principles would be violated if a *Bivens* remedy were recognized." Pl.'s Opp'n at 14. This reading is unsupportable, for both opinions explicitly and repeatedly invoke the Constitution's textual commitment of military affairs to the political branches. *See, e.g. Stanley*, 483 U.S. at 682 (noting "the insistence (evident from the number of Clauses devoted to the subject) with which the Constitution confers authority over the Army, Navy, and militia upon the political branches"); *id.* at 683 ("[C]ongressionally uninvited intrusion into military affairs by the judiciary is inappropriate."); *Chappell*, 462 U.S. at 301 (noting "explicit grant of plenary authority" in Constitution); *id.* at 304 ("Any action to provide a judicial response by way of such a remedy would be plainly

---

19-20. This is not an accurate characterization of the court's opinion, which, consistent with the Supreme Court's direction to address the special factors inquiry to classes of cases, explains why any damages suit dealing with the handling of detainees in foreign war zones would be inappropriate. *See In re Iraq*, 479 F. Supp. 2d at 105-06.

inconsistent with Congress' authority in this field."). Moreover, both cases have been read by courts in this Circuit as foreclosing the creation of judicially inferred damages actions based on the actions of military officials abroad. *See Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208-09 (D.C. Cir. 1985); *In re Iraq*, 479 F. Supp. 2d at 106. But even if *Chappell* and *Stanley* were limited to concerns about interference with military structure and discipline, as plaintiff contends, *see* Pl.'s Opp'n at 14-15, those cases would still require rejection of the sort of damages action proposed by plaintiff. Commanders, their personal assets at risk, would second-guess their decisions to hold potentially dangerous detainees. *See In re Iraq*, 479 F. Supp. 2d at 105. And subordinate personnel, their personal assets equally at risk, would begin to question their commander's orders to hold those detainees. *See id.* Fear of personal liability must not be allowed to engender reticence to act decisively in military operations, especially during wartime. *See Chappell*, 462 U.S. at 300.

Plaintiff also improperly dismisses the risk that a new damages action would interfere with the political branches' conduct of foreign affairs. Pl.'s Opp'n at 16-17, 20. Plaintiff implicitly concedes that controlling cases recognize the political branches' authority in foreign affairs as a reason not to create a damages action, but he attempts to distinguish those cases by observing that they involved claims by non-citizens. Pl.'s Opp'n at 16-17, 20. Plaintiff, however, can point to no reason why a suit by a U.S. citizen implicating military actions abroad would have any lesser effect than a similar suit by an alien, which the D.C. Circuit has ruled out, *see Sanchez-Espinoza*, 770 F.2d at 209. Just as "[a] citizen, no less than an alien, can be part of or supporting forces hostile to the United States," *Hamdi*, 542 U.S. at 519 (internal quotation marks and citation omitted), a suit by a citizen, no less than a suit by an alien, may (deliberately or not) give rise to judicial interference with the conduct of foreign affairs. *Cf. Padilla v. Hanft*, 423 F.3d 386, 391-92 (4th Cir. 2005) (holding that United States citizen could be enemy

12

combatant).  Equally empty is plaintiff's distinction between the foreign policy implications of
"*law enforcement officers* operating on the soil of a foreign sovereign," Pl.'s Opp'n at 17
(emphasis added), and the foreign policy implications of *military personnel* operating on the soil
of a foreign sovereign, *see In re Iraq*, 479 F. Supp. 2d at 102-03 (observing that United States
does not exercise plenary control or sovereignty in Iraq).  In both circumstances, the creation of a
damages action risks "embarrassment of our government abroad through multifarious
pronouncements by various departments," *Sanchez-Espinoza*, 770 F.2d at 209 (internal quotation
marks and citation omitted), on how federal officials may handle individuals captured and
detained on foreign soil.  If anything, a damages action in the context of military operations,
which the Supreme Court has twice recognized as a field inappropriate for *Bivens* actions, can
only interfere more seriously with matters committed to the political branches.  *See Stanley*, 483
U.S. 669; *Chappell*, 462 U.S. 296.

That plaintiff sees no other remedy for his alleged injuries, *see* Pl.'s Opp'n at 16, does not
mean this Court should create a damages action.  "[E]ven in the absence of an alternative, a
*Bivens* remedy is a subject of judgment," and a judicially inferred damages remedy "is not an
automatic entitlement no matter what other means there may be to vindicate a protected interest."
*Wilkie*, 127 S. Ct. at 2597-98.  When a proposed damages action would implicate military
operations, creating such an action is inadvisable even when Congress has not provided any sort
of alternative remedy at all.  *See Stanley*, 483 U.S. at 683 ("The 'special facto[r]' that 'counsel[s]
hesitation' is not the fact that Congress has chosen to afford some manner of relief in the
particular case, but the fact that congressionally uninvited intrusion into military affairs by the
judiciary is inappropriate.").  Nor is Congress required to preclude a damages remedy expressly.
*See id.*; *In re Iraq*, 479 F. Supp. 2d at 107 n.23 ("The mere fact that Congress has not expressly
barred a cause of action does not suggest that inferring a judicially-created one is warranted, or

13

even appropriate."). When, as in this case, the proposed damages action would implicate matters constitutionally reserved to the political branches, Congress' repeated abstention from creating a cause of action indicates that the courts should stay their hand. *See id.* (citing absence of any statutory cause of action from two recent legislative acts governing detainee treatment as "some indication that Congress' inaction in this regard has not been inadvertent").[9] Therefore, this Court should refrain from creating a damages action based on the military's treatment of detainees in foreign war zones and dismiss plaintiff's constitutional claims for lack of a cause of action.

**B.      Qualified immunity bars plaintiff's claims for damages under the Constitution.**

**1.      Qualified immunity bars plaintiff's claims for damages under the Constitution because he has not adequately alleged personal involvement by the individual defendants.**

Plaintiff implicitly concedes that personal liability requires a showing of "direct, personal involvement" in an asserted constitutional deprivation. Pl.'s Opp'n at 22; *see also Int'l Action Ctr. v. United States*, 365 F.3d 20, 23-24 (D.C. Cir. 2004); *Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997). And plaintiff does not dispute that notice pleading requires more than a conclusory and formulaic recitation of a cause of action. *See Bell Atl. Corp. v Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

Yet plaintiff fails to point to any allegation of fact that would establish the individual defendants' direct, personal responsibility. Plaintiff focuses on his complaint's recitation of

---

9      Contrary to the inference urged by plaintiff, *see* Pl.'s Opp'n at 21, the court in *In re Iraq* explained that one of those recent legislative acts, the Detainee Treatment Act, Pub. L. No. 109-163, 119 Stat. 3136 (2006), indicates that Congress did not intend the creation of a new damages action. *See* 479 F. Supp. 2d at 107 n.23.

General Casey's and General Brandenburg's respective positions, *see* Pl.'s Opp'n at 22 (citing Compl. ¶¶ 16-17), but construing such recitations to allege sufficient personal involvement, either directly or by inference, would be tantamount to imposing *respondeat superior* liability, which is unavailable in constitutional tort actions. *See Int'l Action Ctr.*, 365 F.3d at 27-28; *see also Evancho v. Fisher*, 423 F.3d 347, 353-54 (3d Cir. 2005). Plaintiff also points to several other statements from his complaint, *see* Pl.'s Opp'n at 22 (citing Compl. ¶¶ 73-78), but these statements are all recitations of the general legal standard for supervisory liability, not allegations of fact reflecting any act or omission that might give rise to such liability.[10]   *See* Ind. Defs.' Br. at 21-22. Plaintiff's further contention that his assertions of personal involvement are more than formulaic conclusions, *see* Pl.'s Opp'n at 23 ("This is not so."), is just as conclusory as the assertions themselves. The absence of anything but formulaic conclusions renders his complaint insufficient to allege the personal involvement necessary to overcome the first step of the qualified immunity analysis. And because plaintiff has failed to overcome the qualified immunity defense, discovery is barred, for "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818. Therefore, this Court should dismiss plaintiff's constitutional claims.[11]

---

[10]   *See* Compl. ¶ 73 (stating that defendants "are liable . . . because they directed and/or participated in" unspecified deprivation); *id.* ¶ 74 (stating that unspecified defendants had "actual or constructive knowledge" that undifferentiated "actions, orders, policies, or practices" would lead to "violations"); *id.* ¶ 75 (stating that "[d]efendants acted under color of official authority"); *id.* ¶ 76 (asserting that unspecified "actions" proximately caused "violation"); *id.* ¶ 77 (asserting that unspecified "violations" caused injury); *id.* ¶ 78 (asserting state of mind during unspecified "violations").

[11]   *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), *petition for cert. filed*, 76 U.S.L.W. 3349 (U.S. Dec. 17, 2007) (No. 07-827), would not support plaintiff's argument even if it were correctly decided and controlling. The Second Circuit panel in *Iqbal* ruled that the plaintiffs there had sufficiently alleged personal involvement of senior-level supervisory defendants when plaintiffs alleged that those defendants had condoned a specific policy concerning a specific set of procedures to be used in clearing terrorism suspects held in the immediate aftermath of

2.    **Qualified immunity bars plaintiff's claim for damages under the Fourth Amendment because he has not alleged a violation of any clearly established Fourth Amendment right.**

Although plaintiff frames his Fourth Amendment argument in terms of whether the Amendment applies to United States citizens abroad at all, *see* Pl.'s Opp'n at 31, this Court need not resolve that issue. To be sure, plaintiff's failure to raise any controlling case holding that the Fourth Amendment does apply abroad[12] means that no Fourth Amendment right asserted in this case could have been clearly established. *See Pitt v. District of Columbia*, 491 F.3d 494, 512 (D.C. Cir. 2007) (holding that qualified immunity applies when courts have not defined whether a constitutional provision applies to certain conduct); *Butera v. District of Columbia*, 235 F.3d 637, 652-53 (D.C. Cir. 2001) (same). But even if the Fourth Amendment applies abroad, plaintiff has not demonstrated any violation of any Fourth Amendment right, much less any right that was clearly established.

Plaintiff concedes that his "initial arrest and detention were 'reasonable' within the

_____

September 11, 2001. 490 F.3d at 165. The panel explained that assertions that might "arguabl[y]" have required subsidiary factual allegations to support them were sufficient in light of the unique context at issue. *See id.*, *aff'g on this point Elmagraby v. Ashcroft*, No. 04-1809, 2005 WL 2375202, at *20 (E.D.N.Y. Sept. 27, 2005) ("Generally, the assertion that high-level executive branch members created an unconstitutional policy, without more, would be insufficient to state a claim. Here, however, the post-September 11 context provides support for plaintiffs' assertions that defendants were involved in creating and/or implementing the detention policy . . . .") (internal quotation marks and citation omitted). Plaintiff in this matter has neither alleged a specific policy nor identified any special context that would support his conclusory assertions of involvement.

[12]    Other than cases assuming *arguendo* that the Fourth Amendment applies abroad or imputed concessions, plaintiff cites only dicta from *United States v. Toscanino*, 500 F.2d 267, 280 (2d Cir. 1974), in which the Second Circuit concluded that the Fourth Amendment constrained federal actors in their actions against an *alien* abroad. In *United States v. Verdugo-Urquidez*, 494 U.S. at 268-29, the Supreme Court rejected this conclusion as well as the ancillary proposition, relied upon by the Second Circuit, that *Reid v. Covert*, 354 U.S. 1 (1957), establishes that the Fourth Amendment applies abroad for all purposes.

meaning of the Fourth Amendment." Pl.'s Opp'n at 31. And plaintiff fails to defend or even to discuss his assertion that he was subjected to unreasonable searches, *see* Compl. ¶ 81(c). Instead, plaintiff complains of two purported violations: first, that he was not afforded a "presentment" of the type used in domestic criminal proceedings, Pl.'s Opp'n at 31-32; and second, that he was detained even after the United States' investigation of him was allegedly complete, Pl.'s Opp'n at 32-33. In neither instance has plaintiff alleged a violation of any clearly established Fourth Amendment right.

The Fourth Amendment did not entitle plaintiff to any sort of preliminary judicial review in conjunction with his seizure by military personnel in a foreign war zone. Although plaintiff suggests that he must have been entitled to presentment because presentment is required for criminal defendants in the United States, Pl.'s Opp'n at 31-34, he fails to recognize that the domestic presentment requirement is itself the result of a balancing test weighing governmental and individual interests. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991). Nor is presentment an irreducible constitutional minimum, for the Supreme Court has approved extended detention without probable cause, without charge, and without access to courts in times of insurrection. *See Moyer v. Peabody*, 212 U.S. 78, 82-83 (1909). Detention without presentment following a concededly proper arrest in an active war zone is far from unreasonable under the balancing test applied in *County of Riverside*. Processing detainees in a foreign war zone is exponentially more difficult than processing criminal suspects within the United States for many reasons, *see* Ind. Def.'s Br. at 24-25, including the fact that military personnel cannot resort to a pre-existing infrastructure designed to provide judicial review, *see County of Riverside*, 500 U.S. at 53-54 (suggesting that assessment of probable cause be incorporated into existing processes); *Gerstein v. Pugh*, 420 U.S. 103, 120 (1975). Thus, it was not unreasonable to hold Mr. Kar without the sort of presentment required in domestic settings.

17

Even if this Court were to find that the Fourth Amendment required presentment and that Mr. Kar's status board did not satisfy this requirement, qualified immunity would still bar his Fourth Amendment claims. The qualified immunity inquiry is "fact-specific," *see Anderson v. Creighton*, 483 U.S. 635, 641 (1987), and "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 199, 201 (2001). Thus, that a presentment requirement has been imposed within the United States for purposes of domestic criminal law does not clearly establish any such requirement in a foreign war zone. Because plaintiff cites no authority, much less controlling authority or a persuasive consensus, *see Butera*, 235 F.3d at 652, addressing anything like the situation confronted by the individual defendants in this case, qualified immunity bars his claim.[13]

The contours of the second aspect of plaintiff's Fourth Amendment claim—that he was detained after investigation was complete—are somewhat narrower than plaintiff implies. Plaintiff alleges that the investigation was complete in mid-June, Compl. ¶¶ 40-41, and that the status board was scheduled and held just over two weeks later, *id.* ¶¶ 48-49. Plaintiff further maintains that any claim for detention *after* the status board hearing is not a Fourth Amendment claim at all. Pl.'s Opp'n at 30 n.7; *see also* Ind. Defs.' Br. at 28 n.15. Therefore, if his claim based on post-investigation detention is governed by the Fourth Amendment at all—a proposition of which plaintiff is uncertain, *see* Pl.'s Opp'n at 30 n.7, and which defendants reject, *see* Ind. Def.'s Br. at 28 n.15—then any such claim must be limited to the period of just over two weeks between the completion of the investigation and initiation of the status board proceedings.

---

[13]    Plaintiff relies on various statutory or regulatory provisions, *see* Pl.'s Opp'n at 28, 30 n.6, as authority for his argument that his constitutional rights were violated. Even if these provisions were applicable to plaintiff's situation, "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision," *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

18

This period was far from unreasonable, especially given plaintiff's concession that the military must be afforded "greater flexibility as to . . . timing" in this context, *see* Pl.'s Opp'n at 34. Even after the FBI's investigation was allegedly complete, the information collected by the investigation had to be analyzed and the appropriate tribunal arranged, *see* Compl. ¶ 48, all in the context of a foreign war zone. At a minimum, because plaintiff is not able to point to any authority defining what length of time is reasonable in this particular context, no individual defendants—and certainly not senior-level commanders, who are not even alleged to have been informed of the investigation's completion or the timing of the status board—would have been on notice that holding plaintiff for that time violated the Fourth Amendment. Accordingly, qualified immunity bars this claim.

> **3.  Qualified immunity bars plaintiff's claim for damages under the Fifth Amendment because he has not alleged a violation of any clearly established Fifth Amendment right.**

Although plaintiff attempts to present his due process claim as an appeal to largely undifferentiated "elemental legal principles," Pl's Opp'n at 24-27 (quoting Compl. ¶ 1), his approach is not consistent with the analysis required by qualified immunity or due process jurisprudence. As discussed above, analysis of whether a plaintiff has alleged a violation of clearly established law "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. Moreover, "'[c]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.'" *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974) (quoting *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961)). Such consideration of the specific right and specific governmental interests at issue are crucial

19

because due process is "not . . . subject to mechanical application in unfamiliar territory."
*County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998). There is no more "unfamiliar
territory" for application of the due process clause than a foreign war zone. Thus, plaintiff's
sweeping assertions about what is "surely the law," Pl.'s Opp'n at 27, and his reliance on general
statements from cases involving various forms of detention within the United States, *see id.* at
27-28, are far from sufficient to overcome qualified immunity.[14]

Consideration of the specific individual and governmental interests put at issue by
plaintiff's due process claim reveals that plaintiff has failed to identify a violation of any clearly
established right. Plaintiff describes his due process claim as arising primarily from what he
characterizes as his "indefinite, arbitrary, and prolonged detention," *see* Pl.'s Opp'n at 27.[15]
Plaintiff's characterization of his detention as "arbitrary," Pl.'s Opp'n at 24, cannot be reconciled
with his concession that his arrest and initial detention were justified, Pl.'s Opp'n at 18 ("Mr. Kar
does not challenge defendants' decision to apprehend him or initially detain him upon
apprehension."). Indeed, plaintiff apparently does not contest that it was proper to hold him
pending an investigation, *see* Pl.'s Opp'n at 18 (clarifying that plaintiff challenges detention
"after U.S. government officials had finished interrogating and investigating him"), and
affirmatively alleges that this investigation was not complete until mid-June 2005, *see* Compl. ¶
40. Furthermore, despite plaintiff's attempt to characterize his detention as indefinite through

---

[14]    In particular, plaintiff cites *Wolff*, 418 U.S. 539 (procedure for good time credits for
domestic prisoners); *Foucha v. Louisiana*, 504 U.S. 71 (1992) (confinement of mentally ill);
*Parham v. J.R.*, 442 U.S. 584 (1979) (commitment of juveniles); and *Zadvydas v. Davis*, 533
U.S. 678 (2001) (domestic detention of aliens subject to removal).

[15]    Although plaintiff repeatedly contends that he was held for fifty-seven days, *see* Pl.'s
Opp'n at 1, 32, it is unclear how he arrives at this figure. Plaintiff alleges that he was first
detained by Iraqi police on May 17, 2005, *see* Compl. ¶ 25, and released on July 10, 2005, *see*
Compl. ¶ 13—a span of fifty-five days.

counterhistorical speculation, *see, e.g.*, Pl.'s Opp'n at 26 ("But for the habeas case and the accompanying media attention to his case, Mr. Kar would have remained indefinitely in solitary confinement."), his detention was finite. Plaintiff's only real quarrel, therefore, is with the allegedly "prolonged" nature of his detention.

But plaintiff's detention was not so prolonged as to violate due process. The relevant standard—nowhere addressed by plaintiff—is whether the length of the detention "shock[s] the conscience." *United States v. Salerno*, 481 U.S. 739, 746 (1987). Following the period of detention necessary to complete the investigation, a tribunal had to be arranged, *see* Compl. ¶ 48, and after the tribunal, military officials took only six days to review the decision and make arrangements to release plaintiff, *see id.* ¶ 56. In the context of ongoing hostilities in a foreign war zone, this alleged timeline hardly shocks the conscience. But even if this Court found that the time these arrangements took amounted to a violation of due process, plaintiff cites no controlling authority that would have put the individual defendants on notice that plaintiff's detention was unconstitutionally prolonged. Indeed, plaintiff cites no controlling authority applying the Due Process Clause abroad at all. Accordingly, qualified immunity bars his claim.

None of the purported procedural deficiencies asserted by plaintiff amounts to a violation of any clearly established due process right, either. Plaintiff relies exclusively on the plurality opinion in *Hamdi*, but that opinion does not go as far as plaintiff suggests. First, while plaintiff evidently reads *Hamdi* to require some sort of "formal[]" charge or notification, *see* Pl.'s Opp'n at 28, *Hamdi* requires only notice of the factual basis for the detention. Plaintiff received informal notice of the reason for his detention on the day of his arrest, when military officials "explained about the washing machine timers," Compl. ¶ 28, and he received formal notice in advance of his hearing when he was provided with a letter "stat[ing] that the military suspected

Mr. Kar of being in possession of explosive materials at the time of his arrest," *id.* ¶ 48.  Second,

plaintiff complains of lack of access to reports and witnesses, *see* Pl.'s Opp'n at 28-29, but the

*Hamdi* plurality recognized that a detainee's access to such materials properly could be limited,

542 U.S. at 533-34.  Third, plaintiff complains of lack of access to an attorney, *see* Pl.'s Opp'n at

29, but the *Hamdi* plurality never described access to an attorney as mandated by the procedural

due process balancing test it employed and stated only that the petitioner in *Hamdi* would be

entitled to an attorney on remand of his habeas proceedings, *see* 542 U.S. at 539.

In any event, plaintiff fails to note that the plurality in *Hamdi* dealt with a detainee held *in*

*the United States*, *see* 542 U.S. at 511.  Because the procedural protections outlined by the

*Hamdi* plurality arise from application of a balancing test that weighs individual interests against

governmental interests, *see Mathews v. Eldridge*, 424 U.S. 319 (1976), and the governmental

interests militating against more elaborate process are heightened when proceedings take place in

a foreign war zone, any procedural protections available to detainees in foreign war zones are

necessarily more streamlined.  For the same reason, even if this Court were to find that all of the

procedures outlined in *Hamdi* were applicable to plaintiff's situation and that he did not receive

the protections outlined in *Hamdi*, qualified immunity would still bar the claim, for a plurality

opinion about domestic detention does not provide individual military personnel operating in a

foreign war zone with any clear guidance.  Plaintiff's opposition, in fact, does not even address in

any detail his burden of establishing not only a constitutional violation, but a violation of a

*clearly established* constitutional rule.  Therefore, qualified immunity bars plaintiff's due process

claim.[16]

---

[16]    Plaintiff appears to premise a portion of his due process claim on lack of access to familiy members but does not respond to controlling authority establishing the propriety of such restrictions, even in a domestic context.  *See* Ind. Defs.' Br. at 33-35.

**III.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR DAMAGES
UNDER THE GENEVA CONVENTIONS AND THE LAW OF NATIONS.**

Plaintiff's arguments for recognition of a private cause of action under the Geneva
Conventions and the law of nations are unavailing.  Plaintiff addresses the Military Commissions
Act of 2006 ("MCA") only in a footnote asserting that the MCA "applies only to 'enemy
combatants' and not to a U.S. citizen like Mr. Kar."  Pl.'s Opp'n at 36 n.12.  This assertion finds
no support in the statutory text, which provides in absolute and encompassing terms that "[n]o
*person* may invoke the Geneva Conventions . . . in *any* . . . civil action or proceeding to
which . . . a current or former officer, employee, member of the Armed Forces, or other agent of
the United States . . . is a party as a source of rights in *any* court of the United States . . . ."  Pub.
L. No. 109-366, § 5, 120 Stat. 2600, 2631-32 (emphasis added).  Moreover, plaintiff cites no
authority recognizing a private cause of action under either the Geneva Conventions or the law of
nations—a proposed cause of action that has been repeatedly rejected by a variety of courts, *see*
Ind. Def.'s Br. at 36-38.[17]

In any event, this Court need not address whether the Geneva Conventions and law of
nations provide a private right of action because the absolute immunity provisions of the Westfall
Act, 28 U.S.C. § 2679, would bar any such action.  Plaintiff's arguments against application of
the Westfall Act have been repeatedly, consistently, and soundly rejected by courts in this
Circuit.[18]  Even if plaintiff had actually identified a violation of "*jus cogens*" norms, the Westfall

---

[17]    General Casey and General Brandenburg certainly do not concede, as plaintiff suggests,
Pl.'s Opp'n at 35 n.11, that the Geneva Conventions or the law of nations are self-executing.  *See
Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1174 n.1 (D.C. Cir. 1994) (refusing to
enforce international norms in the absence of legislative action); *In re Iraq*, 479 F. Supp. 2d at
115-17 (holding Geneva Conventions not self-executing).

[18]    Plaintiff qualifies his acknowledgment of this consistent rejection by speculating that the
Court of Appeals may take a different view, *see* Pl.'s Opp'n at 36 n.12, 38 n.16, but the D.C.

Act makes no exceptions for such claims. *See In re Iraq*, 479 F. Supp. at 110; *Bancoult v. McNamara*, 370 F. Supp. 2d 1, 7-8 (D.D.C. 2004), *aff'd on other grounds*, 445 F.3d 427 (D.C. Cir. 2006), *cert. denied*, 127 S. Ct. 1125 (2007).  Even conduct characterized as "intentional" and "egregious" falls within the scope of employment when the conduct allegedly arose from the defendants' execution of their command responsibilities, as plaintiff alleges, *see* Compl. ¶¶ 4, 10, 14, 16-17, 59-67.  *See Rasul v. Meyers*, 2008 WL 208731, at *6-12 (holding that "seriously criminal" actions allegedly taken in interrogating detainees fell within scope of employment and that the Westfall Act therefore required substitution of United States for individual defendants).[19] And claims under the Geneva Conventions do not fall within the Westfall Act's exception for federal statutory causes of action because the Geneva Conventions are treaties, not statutes.  *See In re Iraq*, 479 F. Supp. 2d at 112-14 & n.24 (rejecting argument that Geneva Conventions fell within statutory exception and explaining that in *Whitney v. Robertson*, 124 U.S. 190, 194 (1888), "the Supreme Court went only so far as to say that treaties essentially are 'like' a statute, not that they are a statute").[20]  Plaintiff does not dispute that, once the United States has been substituted as a defendant under the Westfall Act, his claims must be dismissed, *see* Ind. Defs.'

---

Circuit in *Rasul v. Myers*, 2008 WL 208731, at *6-12, has since affirmed one of the cases rejecting plaintiff's arguments, *Rasul v. Rumsfeld*, 414 F. Supp. 2d 26 (D.D.C. 2006).

[19]    Plaintiff seeks discovery on the scope of employment issue, but "discovery is not warranted if the plaintiff did not allege any facts in his complaint or in any subsequent filing . . . that, if true would demonstrate that [the defendant] had been acting outside the scope of his employment," *Rasul v. Myers*, 2008 WL 108731, at *12.  *See also Wilson v. Libby*, 498 F. Supp. 2d at 99.  Even assuming all facts alleged by the plaintiff as true, he has still not alleged any conduct outside the scope of employment, so discovery is neither necessary nor warranted.

[20]    Plaintiff apparently concedes, as he must, that his claims under the law of nations also do not fall within the Westfall Act's exception for federal statutory causes of action, *see Harbury v. Hayden*, 444 F. Supp. 2d 19, 37-38 (D.D.C. 2006), *appeal argued*, No. 06-5282 (D.C. Cir. Oct. 22, 2007); *Schneider v. Kissinger*, 310 F. Supp. 2d 251, 267 (D.D.C. 2004), *aff'd on other grounds*, 412 F.3d 190 (D.C. Cir. 2005).

Br. at 40-41.  Therefore, this Court should dismiss plaintiff's claims under the Geneva Convention and the law of nations.

## CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiff's claims against General Casey and General Brandenburg, as well as his other claims, with prejudice.

Dated:  January 31, 2008

Respectfully submitted,

JEFFREY S. BUCHOLTZ                C. FREDERICK BECKNER III
Acting Assistant Attorney General      Deputy Assistant Attorney General


TIMOTHY P. GARREN                  MARY HAMPTON MASON (DC Bar # 4274671)
Director, Torts Branch                 Senior Trial Attorney, Torts Branch


                                   */s/ Zachary C. Richter*
                                   ZACHARY C. RICHTER (Texas Bar # 24041773)
                                   Trial Attorney, Torts Branch
                                   UNITED STATES DEPARTMENT OF JUSTICE
                                   CIVIL DIVISION
                                   P.O. Box 7146, Ben Franklin Station
                                   Washington, D.C. 20044
                                   (202)616-4199 (phone)
                                   (202)616-4314 (fax)
                                   Zachary.Richter@usdoj.gov

                                   ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing document on counsel for plaintiff through this Court's Electronic Case Filing system pursuant to LCvR 5.4(d)(1).

Dated: January 31, 2008


_____*/s/ Zachary C. Richter*_____
ZACHARY C. RICHTER
Attorney for Defendants